(No. 13607.—Judgment affirmed.)

UNITY I. MCKENNA, Defendant in Error, *vs.* THE CHICAGO CITY RAILWAY COMPANY, Plaintiff in Error.

*Opinion filed February 15, 1921.*

1. NEGLIGENCE—*Supreme Court cannot weigh the evidence.* In passing upon the trial court's action on a motion to direct a verdict for the defendant in an action for damages for personal injury, the Supreme Court cannot weigh the evidence but can only determine whether there is any evidence which, taken with all its reasonable inferences, fairly tends to support the cause of action.

2. SAME—*when answer of witness as to rate of speed is not improper.* Where a witness testifies that she did not see the street car which struck the plaintiff until the plaintiff screamed, when she then saw the car pass and come to a stop, and further testifies that she cannot judge the speed of a street car in miles per hour but can tell whether it is running fast or slow, her answer, when asked how fast the car was running, that it was "faster than I ever seen them go," is not improper.

3. SAME—*when improper statement of a witness as to rate of speed will not work reversal.* It is improper for a witness in a street car accident case to state with reference to the speed of the car that it was running "faster than they are supposed to," but such statement is not ground for reversal where other witnesses have testified more specifically to the speed of the car, the plaintiff having testified, without objection, that the car came upon her so swiftly that she did not have time to back away or go forward.

4. SAME—*striking out evidence erroneously admitted cures the error except in extreme cases.* Striking out evidence erroneously admitted cures the error except in extreme cases, where it is manifest that the prejudicial effect of the evidence remained with the jury notwithstanding its exclusion and influenced the verdict.

5. Same—*when improper act of plaintiff's counsel will not reverse.* The action of counsel for the plaintiff in a personal injury case in taking hold of her foot when she was testifying as to her injuries and straightening it, thereby causing her to give an outcry of pain, is improper but is not ground for reversal of the judgment, where the court promptly sustained an objection of opposing counsel to the demonstration and told the jury to disregard it and the outcry of the witness.

Writ of Error to the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. Marcus Kavanagh, Judge, presiding.

Charles LeRoy Brown, (John R. Guilliams, and John E. Kehoe, of counsel,) for plaintiff in error.

James C. McShane, for defendant in error.

Mr. Justice Farmer delivered the opinion of the court:

Defendant in error recovered a judgment against the plaintiff in error in the superior court of Cook county for $10,000 for personal injuries. The Appellate Court for the First District affirmed the judgment, and the record is brought to this court for review by *certiorari.*

We will refer to the parties as plaintiff and defendant, as they were in the trial court.

About 8:45 o'clock the night of June 19, 1915, plaintiff, accompanied by her little daughter, then nine years old, started to cross from the north side of Seventy-ninth street to the south side of the street. That street runs east and west and is intersected by Goldsmith avenue,—a north and south street which connects with Seventy-ninth street from the north but does not extend south of it. A part of both streets was occupied by materials for an extensive viaduct, work on which was in progress. The viaduct is a double level for the use of railroads operated on different levels. There was also debris on the north side of Seventy-ninth street from excavation in the street. The

viaduct crosses Seventy-ninth street north and south just west of Goldsmith avenue, and its construction necessitated depressing Seventy-ninth street below the surface about six feet underneath the elevated structure, the incline from either side extending about one block from the viaduct to the natural street level. There were posts or pillars in the subway supporting the elevated structure. There had previously been two street car tracks in Seventy-ninth street, upon which cars were operated in the usual manner, west-bound cars using the north track and east-bound cars the south track. On account of the construction and excavation work referred to, the south or east-bound track was removed from the street, from the subway and for a block or more east and west of it, and all cars at that place, both east and west-bound, were operated on the north track. Sidewalks, pavement and crossings at and near the intersection of Seventy-ninth street and Goldsmith avenue had been removed. Plaintiff, who lived a mile or more from that place, accompanied by her daughter, was on her way to a store on the west side of the viaduct. They were on foot and traveled along the north side of Seventy-ninth street until they came to Goldsmith avenue and found the passage on that side of the street blocked by materials and debris. There were some planks there, which appeared to be for the purpose of use in passing across the street car track to the south side of the street. It had been raining and the street was muddy. The plaintiff and her daughter started to cross to the south side of Seventy-ninth street at the place where the planks were. The daughter was in front and passed over the street car track in safety, but plaintiff was struck before getting on the track by an east-bound car and severely injured.

The ground of liability charged in the declaration is the negligent operation of the car by defendant. Defendant contends the judgment should be reversed because the proof shows plaintiff was guilty of contributory negligence and

the court should have directed a verdict on that ground; also that prejudicial errors were committed by the court in its rulings on the admission and rejection of testimony, and that plaintiff's counsel and the trial court were guilty of misconduct prejudicial to defendant.

Plaintiff testified that when she turned south from the north side of Seventy-ninth street she looked both east and west and saw no car coming from either direction. The distance from the cinder sidewalk or path on the north side of the street to the car track was about twenty feet. She testified that after getting out into the street and about half way to the track she looked both ways again but did not see any car, and when still nearer the track looked east and west again but saw no car; that she looked most to the east, as she understood a car on the north track would come from that direction. She testified she did not know the south track was not in place; that on account of something that obstructed her view she could not see very good; that she was picking her steps in the muddy street, her little daughter in front of her; that the last time she looked to the west she was right near the track, and when she first saw or heard the car it was "right on me;" that she was struck and remembered nothing after that. She testified her hearing was good; that she was a little near-sighted and wore glasses for that trouble and could see pretty well with them.

The car had a headlight which was burning and the car was lighted inside. It had no passengers but was an empty car going to the barns. There was testimony that the car made considerable noise coming under the subway. The motorman in charge of the car testified that when he first saw plaintiff she was ten or fifteen feet from him. She was about to go over to the south side of the track. It was dark and raining. He was looking straight east as the car moved along. Did not see the little girl. Toohey, a conductor of defendant, not then on duty, testified that

he was riding on the front platform with the motorman in charge of the car. He was looking forward and when he first saw plaintiff she was about a foot and a half from the track. Her clothes were dark and the atmosphere was pretty dark. She was walking south and the car was about eight or ten feet from her. Witness was looking straight east. It was not possible to see plaintiff any further than eight or ten feet on account of the condition of the atmosphere and the lights. The street lights, if burning at all, were very poor. The lights in the car were burning but no light on the platform and shades were on the door. The car had a headlight but witness did not pay much attention to its condition. It was burning. There were some posts on the north side of the track in the subway and there was "lots of dirt piled up," but there was no obstruction between him and plaintiff to prevent him seeing her until she was within a foot and a half of the track. It was the darkness that prevented plaintiff being seen until she was that close to the track.

Defendant contends that the car must have been plainly visible for a considerable distance as it approached from the west, and that plaintiff either did not tell the truth about looking in that direction, or that if she did tell the truth she could not have failed to see the car approaching, or if she was unable to see the approaching car with headlight burning and the inside illuminated the motorman can not be said to have failed to exercise ordinary care in not seeing plaintiff. It is argued that it would be absurd, under such circumstances, to say plaintiff was in the exercise of ordinary care and that the motorman operating the car was not.

In determining whether plaintiff exercised reasonable care and whether defendant was guilty of negligence other matters must be considered. Due, as said by counsel for defendant, "to the extraordinary aberrations from normal produced by the extensive viaduct construction work," it

is difficult to accurately visualize all the conditions, locations and surrounding circumstances at the place of the accident from reading the abstract and briefs, but we have endeavored to understand them with substantial correctness. Without expanding this opinion by an attempt to detail the evidence, it is sufficient to state generally what it tends to show. Both Seventy-ninth street and Goldsmith avenue at the place of the accident were pretty badly torn up and obstructed by the construction, excavation and materials there. The west half, or substantially that much, of Goldsmith avenue was obstructed, the obstruction extending in Seventy-ninth street far enough, at least, so that pedestrians could not pass under the viaduct on the north side of Seventy-ninth street. There was a railed chute or walk on the south side for use by people on foot to go west beyond the viaduct, and it was that walk plaintiff was trying to reach when injured. It appears from the testimony and photographs in evidence that there was much material and debris in Goldsmith avenue and Seventy-ninth street north of defendant's tracks. The plaintiff testified that something west of her seemed to obstruct her view in that direction. It is undisputed that there was "considerable rubbish or debris" there and some posts under the viaduct on the north side of the track, but it is insisted the rubbish and debris were not piled high enough to have obstructed plaintiff's view and the posts would not have obstructed her view when she was near the track. As also tending to show that something obstructed the view, defendant's motorman and the conductor riding on the platform with him testified they were looking east but were unable to see plaintiff until the car was ten or fifteen feet of her, and she was then so close to the track the car could not be stopped so as to avoid striking her. Both witnesses attributed their inability to see, to darkness at the place. Both testified the headlight was burning, the motorman saying that "my headlight was O. K."

We are of opinion it cannot be said, as a matter of law, that plaintiff was guilty of contributory negligence in failing to discover the approaching car; nor does it follow that if plaintiff was unable to see the car approaching, the same conditions that prevented her from seeing it also prevented the motorman from seeing her and that defendant could not therefore be guilty of negligence. The plaintiff's proof tended to show the car was running twenty or more miles an hour; that the headlight was dim and that no bell was sounded. On these questions the evidence was conflicting, that of the defendant tending to show the speed of the car was six or seven miles per hour; but two disinterested witnesses, both having had experience as firemen on steam railroads, testified for plaintiff, one that the car was running twenty miles an hour, the other that it was running twenty-five or thirty miles an hour at the time of the accident. The car was an empty one, going to the barns. It came from the west down an incline to the subway, and after passing through the subway started up the incline to the level of the street, about a block distant. There is a sharp conflict as to the precise place where plaintiff was struck and how far the car ran before it was stopped. As we have nothing to do with the weight of the evidence, it is sufficient to say that plaintiff's evidence tended to show the car ran about 158 feet before it was stopped, dragging her about 100 feet, and defendant's evidence tended to show plaintiff was struck further east than her testimony tended to show; that the car stopped in about 25 feet and that she was not dragged at all. The motorman testified that when he saw plaintiff he immediately reversed his power, put on the emergency brakes and stopped as quick as he could. We cannot consider and determine the weight of the evidence, but only whether there is any evidence which, taken with all its reasonable inferences, fairly tends to support the cause of action. (*Curran* v. *Chicago and Western Indiana Railroad Co.* 289 Ill. 111.) The motorman testified

there were no planks for crossing the track at the place of the injury in the afternoon of the day it occurred; that a good many men were working there but he did not know whether they worked nights; that it was a dark place and muddy, and he knew it was a dangerous place. He was probably mistaken about no light being there, as a number of other witnesses testified to an electric and a gas light being in the near vicinity of the place of the injury. It cannot reasonably be said the place was not a dangerous one and called for the operation of cars both ways on a single track with a degree of care commensurate with the danger. In view of all the evidence the court properly refused to direct a verdict.

It is strenuously insisted by the defendant that the court erred in its rulings on the testimony of Miss Covert, a witness for plaintiff. The witness testified she was traveling on foot on the north side of Seventy-ninth street behind the plaintiff and her daughter. They started to cross Seventy-ninth street south. Witness heard a scream but did not see the car until she heard the scream. She had lived in Chicago seventeen years, frequently rode on street cars and saw them pass daily. She testified she could not judge the speed of a car in miles per hour but could only tell whether a car was going very fast or very slow. On being asked how fast the car was running she answered, "Faster than they are supposed to." Counsel exclaimed, "What?" and the witness replied, "Faster than I ever seen them go." Counsel for defendant objected "to that" and moved to strike out the answer. The objection was overruled. The witness testified she neither saw nor heard the car until the accident happened. During the examination of the next witness counsel for defendant moved the court to strike out the statement of Miss Covert "in reference to the speed of the car, on the ground that on cross-examination her statement was that she didn't see this car at all until after the accident." The motion was overruled, and

296—21

counsel for plaintiff by leave of court recalled the witness and she testified she never saw the car until she heard the scream; that she saw the car passing and saw it stop; that she didn't see the car till she heard the scream, which must have been after the accident. Thereupon counsel for defendant renewed his motion "to strike out all her testimony regarding the speed of the car," which was overruled. The first answer of the witness, that the car was running "faster than they are supposed to," was improper, but no objection was made until the next answer was given,—that the car was running "faster than I ever seen them go." When that answer was made counsel objected "to that" and moved to "strike out the answer." It appears from the motion later made to strike out the witness' testimony as to speed, it was based on the ground stated in the motion that the witness did not see the car till after the accident. That was not a valid ground of objection. The witness was familiar with street cars from riding on them and observing them daily. She saw the car just as it struck plaintiff and saw it pass on until it stopped, and it was not improper for her to testify whether its speed was slow or fast. (*Overtoom* v. *Chicago and Eastern Illinois Railroad Co.* 181 Ill. 323; *Illinois Central Railroad Co.* v. *Ashline,* 171 id. 313; *Chicago City Railway Co.* v. *McDonough,* 221 id. 69; *Potter* v. *O'Donnell,* 199 id. 119.) Miss Covert's answer that the car was running faster than she had ever seen them go was, in substance and effect, that it was running fast. It was not the most important testimony on that question and was not controlling. Other witnesses had testified more specifically as to the rate of speed. Plaintiff testified, without objection, that after she saw the car it came on her so swiftly that she did not have time to back away or go forward. The incompetent answer of the witness that the car was running faster than they were supposed to was not of a character, in view of the other evidence, to require a reversal

of the judgment. Indeed, if her entire testimony as to speed had been incompetent it was not controlling on that question.

The testimony of Miss Morene that the car came very fast was on motion of defendant's counsel stricken out by the court at the conclusion of the evidence for defendant.

Dr. Johnstone was the first medical witness examined by plaintiff. At the time he testified no witness had been examined as to the nature and extent of plaintiff's injury. He had not been her attending physician but had examined her the day before the trial began. He testified, among other things, to pelvic injuries and disorders. On objection being made by counsel for defendant, plaintiff's counsel said he expected to show that condition was due to the accident and the court ruled that he might proceed. When Dr. Mather, who was plaintiff's attending physician and surgeon, testified, he stated he had not made a pelvic examination. The only testimony that might have any tendency to connect the pelvic troubles with the accident was the testimony of the plaintiff that she had no unusual difficulty in giving birth to her two children born before the accident, and that before her injury her menstrual periods were regular and were attended with very little pain and that since the accident she had ceased to menstruate and had more or less "pain around there, and soreness," which she never had before her injury. Dr. Johnstone also testified the plaintiff had a cataract of the left eye and that was not connected with the injury. That testimony was not objected to at the time or a motion made to strike it out. At the conclusion of plaintiff's case counsel for defendant moved to strike out the testimony of Dr. Johnstone as to the cataract and pelvic troubles on the ground that the evidence did not tend to show they were attributable to the accident. The motion was allowed and that testimony stricken out, plaintiff's counsel consenting thereto.

Dr. Johnstone also testified that the coccyx, or small end of the spine, had been fractured and had abnormal mobility. It is insisted this condition was not connected with the injury by the testimony and should not have been admitted. We think this a misapprehension. Dr. Mather, the plaintiff's attending physician, testified that in his opinion there was a fracture of the coccyx. He described the treatment he gave plaintiff, and said there was nothing he could do for that injury except give something to relieve pain. He had not examined it after the first six months from the time of the injury, but when he did examine it it was loosened. Plaintiff testified that she had difficulty with the lower part of the spine; that it pained her every time she got up or sat down and when she walked. That trouble was at the end of the bone.

It is also objected that Dr. Johnstone's testimony as to the loss of mobility of the right knee and ankles was based on subjective symptoms. He testified that the knee was so stiffened that it had about one-eighth of normal mobility, and that the ankles were stiffened and their mobility greatly impaired. The doctor's testimony, we think, not susceptible to any such construction. He testified he had made a physical examination of plaintiff's knee and ankles, and that he did not depend upon what the plaintiff said but what he found from his examination and manipulation. He was corroborated also by plaintiff's attending physician.

Defendant further complains that it was prejudiced by the misconduct of the plaintiff's counsel. During the trial, while plaintiff was on the witness stand testifying to her injuries and the condition her knee and ankles were in with reference to motion, her counsel noticed the toe of one foot which was above the floor turned inward. He took hold of it and attempted to straighten the toe, when plaintiff made an outcry or expression of pain. Counsel for defendant objected to the demonstration, and the court said: "The

objection made by counsel to the last demonstration is sustained and the jury are to disregard it and the outcry made by the witness; they are not to in any manner consider it; regard that as not having been made at all; disabuse your minds of it, gentlemen; do not consider it."

At the end of plaintiff's case defendant moved to withdraw a juror and continue the case because of the conduct of plaintiff's counsel referred to and also because of the testimony of Dr. Johnstone with reference to the plaintiff's pelvic condition and cataract of one eye, which motions were overruled.

Defendant contends the testimony stricken out was calculated to increase the amount of the verdict and that the impression made upon the minds of the jury by it was not removed in the court's ruling striking it out, and the same claim is made as to the conduct of plaintiff's counsel referred to. The verdict was for $10,000. The principal injuries complained of by plaintiff and which the testimony showed or tended to show resulted from the accident, were a fractured right thigh, which resulted in shortening the leg two and one-half inches; an injury to the right knee, stiffening it so that only a small fraction of its normal mobility remained; injuries to both ankles, causing almost complete loss of motion in the left ankle and the loss of a third to a half of the motion in the right ankle, both ankles remaining badly swollen. There was also fracture and displacement of several ribs and a cut or wound across the top of the head. Plaintiff was thirty-five years old and in good health when injured. She was a married woman and the mother of two children, aged twelve and fourteen years, respectively. She was rendered unconscious by the injury and remained so three days. She was confined to a hospital for three months and during that time suffered great pain. She testified it was about a year after she left the hospital before she could move about with the aid of crutches and was still using one crutch. Prior to her injury she had

done her own housework but was not able to do it now. She testified there was stiffness and pain in her knee and ankles at the time of the trial. In view of the plaintiff's condition three years after the injury, which the evidence shows was attributable to the accident, and her pain and suffering, we cannot say the jury were influenced by the evidence complained of in arriving at the amount of their verdict. Indeed, it does not appear to us that they were so influenced, because the verdict is not excessive for the injuries proven. Defendant did not assign as error in the Appellate Court that the verdict was excessive, but contended there, as here, that the evidence stricken out might reasonably have influenced, and probably did influence, the jury in fixing the amount of the damages. While the authorities are not unanimous, the general rule is that striking out evidence erroneously admitted during a trial cures the error except in extreme cases, where it is manifest the prejudicial effect of the evidence remained with the jury despite its exclusion and influenced their verdict. (38 Cyc. 1440, and cases in note; *Pennsylvania Co.* v. *Roy,* 102 U. S. 541.) In *Brown* v. *Illinois, Iowa and Minnesota Railway Co.* 209 Ill. 402, the court said, where improper evidence is stricken out by the court it will not be reversible error unless it appears the jury were influenced by reason of its introduction. We do not consider this an extreme instance where it is manifest that the effect of the evidence stricken out remained and influenced the jury. The size of the verdict does not indicate it, and as said by the court in *Devine* v. *Chicago City Railway Co.* 262 Ill. 484, we must assume the jury possessed the qualifications required by the statute. If they did, they knew when the evidence was stricken out it was not to be considered by them.

As to the conduct of counsel in turning plaintiff's foot while she was upon the witness stand, it was wrong and should not have occurred. It does not appear from the record that counsel intended or expected his act would bring

an exclamation of pain from the witness or that he had any ulterior motive, but it was nevertheless an improper occurrence. However, for the reasons stated in the discussion of the stricken-out evidence, we do not think the court erred in refusing the request to withdraw a juror and continue the case. The court in emphatic language sustained the defendant's objection to the demonstration and told the jury not to in any manner consider it but to disregard it. In view of the character of the demonstration and the court's prompt and emphatic action and the result of the trial it does not appear reasonably conceivable the judgment should be reversed on that account.

We find no support in the record for the claim that defendant was prejudiced on the trial by misconduct of the presiding judge.

The judgment is affirmed.          *Judgment affirmed.*