(No. 30427.—

DOROTHY PERKINS *et al.,* Appellants, *vs.* WILLIAM BROWN
*et al.,* Appellees.

*Opinion filed May 20, 1948—Rehearing denied September 15, 1948.*

DAVID J. MADDOX, of Chicago, for appellants.

DONALD J. O'BRIEN, RUSSELL & BRIDEWELL, CHARLES
F. GRIMES, CARL F. FAUST, and LEONARD HIGLEY, all of
Chicago, for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Dorothy Perkins, Lucille Payne and Estherline Tyler, claiming to be the only heirs-at-law of Emma Mimms, a spinster, who died intestate December 8, 1946, filed suit in the circuit court of Cook County to cancel and set aside a purported deed of conveyance from the decedent to William Brown and Augustine Brown, his wife, dated October 28, 1946, and also to cancel and set aside a $2000 mortgage on the premises to Archer-Hoyne Federal Savings and Loan Association, made by the Browns. The amended complaint charged that for a long time prior to her death, Emma Mimms was suffering from a chronic kidney disorder, heart disease and general senility; that she was about the age of 72 years and of unsound mind from the lingering illness; that while she was in this state of mind and body and did not know what was going on, the Browns forged her signature to the purported deed of conveyance for the purpose of stealing and taking from her the home and only place of abode which she had, and that they took undue advantage of her in her weakened, senile and helpless condition, to further carry out their scheme to defraud her of her property. By an amendment to the amended complaint it was further alleged that the appellees, William and Augustine Brown, had been close friends and confidants of Emma Mimms for more than 35 years and that a confidential relationship existed between her and the Browns. The appellees answered admitting that they had been close friends and confidants of the deceased for more than 35 years and that a confidential relationship existed between them but denying all other charges. They alleged that the deceased was physically and mentally alert when she executed the deed and denied that she was acting under their direction and influence. They later amended paragraph 6 of their answer concerning the existence of a confidential relationship in which they alleged that if by the

term "confidential relationship" was meant a close personal relationship between themselves and Emma Mimms, they admitted the same, but if by said term it was meant what is known as a fiduciary relationship, then they denied the same.

A hearing was had before the chancellor and a decree entered finding that the deed in controversy bears the genuine signature of Emma L. Mimms; that it was executed, acknowledged and delivered by her to William and Augustine Brown as her own free, voluntary and deliberate act; and that she was fully aware of the nature of her act, had complete control of her mental faculties and was not acting under compulsion, duress, undue influence, domination or control by or on behalf of any person or persons. The appellees were decreed to be the owners, in fee simple, of the real estate conveyed, subject to the lien of the mortgage from them to Archer-Hoyne Federal Savings and Loan Association. The amended complaint, as amended, was dismissed for want of equity and this appeal followed. A motion was filed in this court to strike the transcript of the record, which motion was taken with the case.

It is not contended that the report of proceedings or the transcript of the record was not filed in apt time, but only that the same is not shown by the transcript or the abstract. However, since the filing of the motion and before the case was reached for hearing, appellant, by leave of this court, filed an additional transcript and an additional abstract, which supplied the deficiencies in the original transcript and abstract and thus obviated these objections. *Francke* v. *Eadie,* 373 Ill. 500.

The evidence as disclosed by the record shows that Emma Mimms and the Browns, who were married in 1918, had been friends for many years, and that Miss Mimms and Brown, who was a friend of her brother, first became acquainted in 1908, when they were both working for the same employer.

The property in question was located at 2251 Maypole Avenue, in Chicago, was improved with a two-story brick house of 9 rooms, and had been owned by deceased since 1919. She lived there and rented some of the rooms, her income from the rents being from $100 to $130 a month. During the ten-year period prior to her death, she had not worked, but had lived on her rents. The property was free of incumbrance at the time of conveyance to the Browns, except for a tax sale lien upon which the amount due was in excess of $300.

Brown testified that she first offered him the property in June, 1946, that she told him to have the records checked and find out what was against it and the amount of the unpaid taxes; that in the following August she again brought up the subject of giving him the property and asked him what was the matter the lawyers didn't get the deed taken care of; that she told him she was anxious to get it off her mind. He testified that he went to Edward J. Brady, a real-estate man who had sold him his home, and told him Miss Mimms had given him the place; that Brady had a title search made and wrote to the mortgagee of a $115 mortgage against the property, which was un-released, but received no reply; that Miss Mimms was unable to find her papers and gave Brown the key to her safety-deposit box, and on her authority he went to the box at the West Town Vault Company and found the release of the mortgage there. He further testified that on October 29, 1946, he went with Brady to the home of Miss Mimms and she asked them if they had come to have the deed signed, that they told her yes, and Brady produced the deed and asked her if she would sign it; that she signed the deed in their presence and Brady then signed it on the back and after it was signed she handed it to the witness and said she was glad it was over with, that this was what she had made up in her mind to do in 1943. He further testified that he had never at any

time asked her to convey him the property and was surprised when she first mentioned doing so.

Edward J. Brady, the notary public who prepared the deed and took the acknowledgment, testified that he went with Brown to the home of Miss Mimms on October 28, 1946; that he told her that Brown had asked him to come over at her request to have a deed signed transferring the property to Brown; that she replied she was glad he had come, that she had waited for a long time; that he explained to her he was delayed in coming because of the time taken in making tax and title search; that he read the deed and explained its contents to her and asked her if she was going to sign it of her own free will and if she understood what it was for and she said she did; that she signed the deed and he put his acknowledgment on it, handed it to her and she said she was glad that was through with and gave the deed to Brown.

Dorothy Perkins, one of the plaintiffs, testified that Miss Mimms had been ill for about two years before her death; that she first had a doctor in September or October, 1945, and then did not go back to him any more; that she had high blood pressure and a kidney condition, and that the witness visited the deceased frequently during the month of October, 1946. Upon being asked by her counsel if she knew what her condition was on the day the deed was signed, on October 28, 1946, she answered, "Well, she was ailing but she was feeling very good." She further testified that she visited her on October 27, 1946, and that the deceased was not in a condition to write on that day nor from then on until her death; that she had seen the deceased write and, in her opinion, the signature on the deed was not that of Emma Mimms.

Lucille Payne, another plaintiff and a niece of the deceased, testified that she was acquainted with her aunt's handwriting, that she had seen her sign her name seven

or eight times, and that the signature on the deed was not the genuine signature of her aunt.

Dr. T. C. Henderson, a licensed physician, who had known the deceased and lived next door to her for 20 years, testified that he saw and talked to her practically every day during the month of October, 1946, and that she appeared to be mentally alert and capable; that she had complained to him daily of her health for a long time; that he was first called to treat her professionally November 23, 1946, and found she was suffering from diseases which had probably existed for years. He further testified that neither the diseases with which she was afflicted, nor the pain which she suffered, affected her mind.

Sarah Pearl Henderson, who had known the deceased and lived next door to her for 28 years, testified that she saw and talked with her almost every day during the month of October, 1946; that she was mentally alert, but physically a little frail, that is, she didn't get about and move as fast as she used to; that she had seen her sign her name many times, and saw her sign it in October, 1946, at a meeting held at the witness's home, when a card was passed around by an agent. She further testified that the signature on the deed was in the handwriting of Miss Mimms, and that Miss Mimms signed her name "Mimms" but sometimes she would use an "n" instead of an "m."

Ethel White, a roomer in the home of Miss Mimms for six years prior to her death, testified that during the month of October, 1946, the deceased was sick and ailing, but she was walking around as usual, and that she was not confined entirely to her bed until eight days before her death.

Anna Charter, also a roomer, testified that during the month of October, 1946, she saw the deceased and talked to her nearly every day and her mind appeared to be fine.

Herbert F. Walters, a handwriting expert, testified that in his opinion the signature on the deed was signed by

the same person who signed numerous admitted standards of the deceased's handwriting.

We have set out the testimony at some length in view of the pleadings and contentions as disclosed by this record.

Appellants contend that where a fiduciary relationship is established in a suit to set aside a deed, it becomes incumbent upon the defendant-grantee in the deed to prove by competent witnesses that the dealings were fair and the grantor in the deed had full and independent knowledge of the transaction; and it is urged that the Browns are conclusively bound by the admission in their sworn answer of the existence of a confidential relationship between themselves and the deceased, and that the effect of such admission was not removed by their retraction of it in the amendment to their answer which was subsequently filed.

From the evidence as shown by the record here it conclusively shows that the deed was fairly and understandingly made, and therefore there is no necessity of determining the question as to the admission of a confidential relationship as disclosed by the pleadings.

It is further urged by appellants that when examining Brown as an adverse witness, there was elicited from him the statement that he did not buy the property from deceased or pay her for it, but that he had a deed for it which she had given him, and that such examination was proper under section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1947, chap. 110, par. 184.) He identified the deed in his testimony and was asked when he received it, and by whom, when, where and in whose presence it was signed. Brown was not a competent witness in his own behalf as to any transaction or conversation with the deceased. (Ill. Rev. Stat. 1947, chap. 51, par. 2.) However, appellants, who were suing as heirs of the deceased, were privileged to call him as a witness and inquire of him concerning such matters if they desired to do so. (Ill. Rev. Stat. 1947, chap.

51, par. 2.) But by so doing they waived his incompetency with respect to the matters concerning which they examined him and could not thereafter preclude him from testifying in his own behalf concerning the same matters. The rule is that where a party, who is incompetent to testify for himself as to a transaction, is called by the adverse party and questioned concerning the same, he is thereby made competent to testify in his own behalf as to the whole of such transaction, although his incompetency is not removed as to other matters about which he was not interrogated by the adverse party. (*Garrus* v. *Davis,* 234 Ill. 326.) The justice of this rule is too apparent to require discussion. It would be palpably unjust if a litigant were permitted to call an adverse party and examine him as to one fact or phase of a transaction in his favor and then invoke the bar of the statute when the party examined sought to testify further with regard to the same transaction for the purpose of explaining his former testimony or correcting an erroneous impression left thereby. Section 60 of the Civil Practice Act, (Ill. Rev. Stat. 1947, chap. 110, par. 184,) giving the litigant the right to call the adverse party and examine him as if under cross-examination, in noway abrogates the rule that where a party calls a witness and examines him as to a particular part of a transaction, the other party may call out the whole of the transaction bearing upon or tending to explain or qualify the particular part to which the examination of the other party was directed. Appellants having called Brown to testify and elicited from him the statement that he had received a deed for the property from the deceased and that he did not pay her for it or buy it from her, it was entirely proper to permit him to explain the entire transaction with the deceased, including the conversations had by her with him concerning the conveyance of the property, as such conversations were a part of the transaction inquired about by appellants.

From an examination of the testimony as shown by the record in this case, we are of the opinion that it does not tend, in any degree, to support appellants' charge of fraud, forgery, undue influence or mental incapacity. The decree of the circuit court of Cook County dismissing the complaint for want of equity is, therefore, affirmed.

*Decree affirmed.*