Carol Clifford, Plaintiff-Appellee-Appellant, v. Ronald F. Schaefer and Grace M. Goedke, Defendants-Appellees, and Paul L. Williams, Executor of the Estate of Bertram H. Yarwood, Deceased, Defendant-Appellant.

Gen. Nos. 52,564 and 52,662. (Consolidated.)

First District, Second Division.

January 28, 1969.

Alan E. Morrill, Robert A. Sprecher and Edward W. Barrett, of Chicago (Morrill, Koutsky, Klomann and Chuhak, of counsel), for appellant.

Berchem, Schwantes & Thuma, Mann & Rifken, and William J. Harte, of Chicago (Herold E. Rifken and William J. Harte, of counsel), for appellees.

MR. JUSTICE BURKE delivered the opinion of the court.

A two-count complaint was filed by plaintiff Carol Clifford to recover damages for personal injuries allegedly sustained by her when an automobile operated by defendant Bertram Yarwood in which plaintiff was a passenger, collided with an automobile operated by defendant Ronald Schaefer and owned by defendant Grace Goedke. Count I of the complaint alleged that Yarwood operated his vehicle in a wilful and wanton manner, thereby causing the injuries complained of; Count II alleged Schaefer and Goedke were guilty of ordinary negligence in the operation of the Goedke automobile. (Yarwood died after the commencement of this action but prior to trial, the cause of death not appearing of record, and defendant-executor Paul Williams was substituted in his stead; for convenience, Williams will hereinafter be referred to as "Yarwood" wherever relevant.) Judgment was entered on a verdict returned against plaintiff and in favor of Schaefer and Goedke, from which plaintiff appeals; judgment was also entered on a verdict rendered in favor of plaintiff and against Yarwood, in which damages were assessed in the amount of $35,000, from which Yarwood appeals.

The mishap occurred at a restaurant entrance driveway on U. S. Route 20 near Elgin, Illinois approximately 5:30 p. m. on August 9, 1965. The weather was clear and dry, and it was daylight. Route 20 carries two eastbound lanes and two westbound lanes of traffic at that point, and the speed limit is posted at 65 miles per hour. The restaurant, which is situated on the south side of the highway, is serviced by two entrance driveways from the highway, to the east and to the west of the restaurant

forming a "horseshoe" pattern in the front of the restaurant. Along the highway to the west of the restaurant is a rise in the landscape, resulting in a rise or hill in the highway at that point. A vehicle traveling easterly on the highway, to the west of the hill, does not become visible from the east side of the hill until the vehicle reaches the crest of the hill, a distance approximately 150 to 200 feet from the east entrance driveway to the restaurant. Likewise, westbound vehicles do not become visible to operators of eastbound vehicles until the eastbound vehicle reaches the crest of the hill.

After the jury was instructed by the trial court that her testimony should be considered only as to defendants Goedke and Schaefer, but not as to Yarwood, plaintiff testified that she and Yarwood, aged 72 and 78 respectively, had been friends since 1909. On the date in question they were proceeding in the Yarwood automobile to the restaurant above referred to for dinner, traveling westerly along Route 20. Plaintiff was seated on the passenger side of the front seat. As Yarwood was turning into the east restaurant entrance driveway, crossing the eastbound lanes of traffic, the witness for the first time observed the Goedke automobile approximately 10 feet from her side of the Yarwood vehicle. Plaintiff stated that she was knocked unconscious by the impact of the vehicles and remembered nothing thereafter until she regained consciousness in a hospital.

Defendants Schaefer and Goedke were also permitted to testify concerning the accident after the jury was instructed that their testimony could be considered only as to each other and to plaintiff, and not as to Yarwood. Schaefer testified that he left his place of employment in Elgin between 5:15 and 5:30 p. m. on the evening in question. He was driving an automobile owned by his mother-in-law, Grace Goedke, who was a passenger in the automobile at the time. Schaefer testified that he was proceeding eastward on Route 20 at a speed of between

237

50 and 55 miles per hour, traveling in the outer or southernmost lane of traffic. As the Goedke automobile reached the crest of the hill west of the restaurant, Schaefer observed the Yarwood automobile in the inner westbound lane of traffic, to the east of the east restaurant entrance driveway. When the witness reached to within 80 to 85 feet of the Yarwood automobile, the latter vehicle commenced a left-hand turn across the eastbound lanes of traffic into the east entrance driveway. Schaefer testified that he applied the brakes on the Goedke automobile, swerved slightly to the left, and struck the center portion of the Yarwood vehicle on the passenger side with the right front portion of the Goedke automobile. The collision occurred in the outer lane of eastbound traffic. Schaefer further stated that three to five seconds elapsed between the time he first observed the Yarwood automobile and the time of the collision, and that it was only one or two seconds between the time he noticed the Yarwood vehicle commence the left-hand turn and the time of impact.

Mrs. Goedke testified that she was seated on the passenger side of the front seat of the Goedke automobile operated by her son-in-law on their way home from work. She testified that she first noticed the Yarwood vehicle several automobile lengths east of the east entrance driveway to the restaurant as the Goedke vehicle reached the crest of the hill west of the restaurant. She further testified that when the Goedke vehicle reached the west restaurant entrance driveway, she observed the Yarwood vehicle facing in a southwesterly direction at the east driveway entrance, partly in the inner westbound lane of traffic and partly in the inner eastbound lane of traffic. Mrs. Goedke testified that Schaefer exclaimed, "Oh, no!" and attempted to brake the Goedke automobile but was unable to avoid a collision with the Yarwood vehicle.

County deputy sheriff John Sbarbaro testified that he received a radio communication to investigate an automo-

bile accident at the restaurant approximately 5:35 p. m. on the day in question, and arrived at the scene approximately five minutes later. Officer Sbarbaro testified that he had conversations with Yarwood and with an eyewitness, Louis Bertani, at the scene. Over objection of counsel for Yarwood, the officer was permitted to testify that Bertani told him that the Yarwood automobile, in making the left turn, "cut in front of" the Goedke vehicle. Again over objection, the officer testified that he was told by Yarwood at the scene that he, Yarwood, thought he had ample time in which to make the turn into the driveway. The officer also stated that he measured tire skid marks from the Goedke automobile between 50 and 55 feet, and further that he observed no skid marks caused by the Yarwood vehicle.

Louis Bertani testified that he had just arrived in the parking lot of the restaurant and was getting out of the automobile in which he had been riding when he heard the screech of automobile tires followed by a crash. The witness testified that the Schaefer automobile was proceeding easterly approximately 40 or 50 miles per hour and that the Yarwood vehicle was in the process of making a turn across the eastbound lanes of traffic, traveling approximately 20 to 25 miles per hour. The collision occurred in the eastbound lanes of traffic. The witness further testified that the vehicles were approximately 30 feet apart when he first heard the screech of tires. He related that he spoke to the officer who investigated the accident, two to five minutes after the officer arrived, and told the officer that the Yarwood automobile turned in front of the Goedke automobile.

Plaintiff was then called by Yarwood as an adverse witness and testified that she had known Yarwood for many years and that she had been a passenger in his automobile on many occasions. She testified that, on the day in question, as the Yarwood automobile approached the east entrance driveway to the restaurant, Yarwood slowed

the vehicle. Plaintiff also testified that she remembered the directional signal click at least two or three times before the accident, but that she was not certain when the signal was turned on.

■ Upon the death of Yarwood prior to the trial herein, plaintiff and defendants Schaefer and Goedke were rendered incompetent by the provisions of the Dead Man's Act to testify as to any conversation or transaction had with the deceased prior to his death. Ill Rev Stats 1965, c 51, par 2. The interests of all three parties were "adverse" to those of Yarwood within the meaning of the statute, plaintiff because she was seeking relief against Yarwood (Ruspantini v. Steffek, 346 Ill App 470, 105 NE2d 323, revd on other grounds 414 Ill 70, 110 NE2d 198) and defendants Schaefer and Goedke because they could avoid liability, partially or completely, by showing that Yarwood acted in a wilful and wanton manner in the operation of his automobile and that he was the cause of the accident. (See Mernick v. Chiodini, 12 Ill App2d 249, 258–259, 139 NE2d 784.)

■ However, plaintiff was called by Yarwood under section 60 as a witness to testify as to Yarwood's actions immediately prior to the accident, thereby waiving her incompetency to testify to the accident. Perkins v. Brown, 400 Ill 490, 81 NE2d 207. The question arises whether the testimony given at trial by Schaefer and Goedke may likewise be considered against Yarwood, in the light of the third exception contained in the Dead Man's Act providing that where the protected party, or any person "having a direct interest" in the outcome of the action, shall testify on behalf of the protected party to any conversation or transaction with the opposite party or party in interest, then such opposite party or party in interest may also testify to the same transaction or conversation. Ill Rev Stats 1965, c 51, Par 2, 3rd exception. (See also 55 Illinois Bar Journal, 18, 20; 80 ALR2d 1296, 1298.)

In the case of VanMeter v. Goldfarb, 317 Ill 620, 148 NE 391, the decedent, his brother and a friend darted over a fence into the path of defendant's oncoming automobile. Decedent's brother and the friend ran clear of the automobile, but decedent ran into its side, causing his death. Decedent's brother testified on behalf of the decedent's estate concerning the occurrence; defendant, over objection by plaintiff, testified in his own behalf as to the occurrence. Appealing from a judgment entered upon a verdict for defendant, plaintiff maintained that the term "transaction" as employed in the Dead Man's Act referred only to those relationships between parties which are brought about by negotiations or mutual dealings, and that it did not refer to "mere occurrences" such as automobile accidents. The reviewing court there found that an "occurrence" was a "transaction" within the meaning of the statute and held that the trial court properly allowed defendant to relate his version of the accident.

█ While it is true that a witness whose incompetency has been removed by such action on the part of the adverse party may testify only to that particular conversation or transaction gone into by the other party, he may nonetheless explain the "entire conversation or transaction" which was gone into by the other party. Perkins v. Brown, 400 Ill 490, 81 NE2d 207. If, therefore, the testimony of Schaefer and Goedke may properly be considered against Yarwood, it may be considered as to the entire transaction or accident. VanMeter v. Goldfarb, 317 Ill 620, 148 NE 391.

█ As appears from the line of questioning employed by Yarwood, plaintiff was called as a witness by Yarwood for the purpose of eliciting testimony as to the nature of Yarwood's actions in the operation of his vehicle while in the process of executing the left-hand turn into the restaurant driveway. That this was an attempt to demonstrate Yarwood's freedom from any wrongdoing in the transac-

241

tion cannot be seriously disputed. Plaintiff was a party directly interested in the outcome of the action, whose interests were adverse to those of Yarwood. Defendants Schaefer and Goedke, being also involved in the accident, were also parties to the transaction within the terms of the Dead Man's Act. Since Yarwood sought to employ the testimony of a party directly interested in the outcome of the action to demonstrate his freedom from wrongdoing in the transaction, thereby attempting to attach, in full or in part, liability upon Schaefer and Goedke for plaintiff's injuries, the latter defendants should be afforded an opportunity to refute that evidence by their own testimony. Ill Rev Stats 1965, c 51, Par 2, 3rd exception. An undue advantage accrues to a party who, by trial strategy, joins a person protected by the statute as a party defendant and who is later called as an adverse witness by the protected party to testify to a transaction common to all parties in the action, thereby ostensibly foreclosing the testimony by the protected party's codefendants as to the transaction to which they may have otherwise been competent to testify.

By reasoning similar to that which appears in Mernick v. Chiodini, 12 Ill App2d 249, 258–259, 139 NE2d 784, where certain defendants were disqualified from testifying as to the actions of their deceased codefendant preceding an automobile accident, on the ground that they would benefit from a finding of liability on the part of the deceased's estate, Yarwood would also most probably have benefited by the use of plaintiff's otherwise incompetent testimony, to the detriment of Yarwood's codefendants. In calling plaintiff as an adverse witness for Yarwood, the door was opened to the admissibility of the testimony of Yarwood's codefendants as to the entire accident. (Although one authority states that "[t]he witness opening the door *must* be a protected party or a person having a direct interest *with him*," ((ital, by court)) the case from which this conclusion is drawn does not so

242

expressly hold. See Cleary, Handbook of Illinois Evidence, 2nd ed, 1963, at pages 126–127; Volbracht v. White, 197 Ill 298, 64 NE 324.)

■■ Yarwood maintains that the jury's verdict, that he acted in a wilful and wanton manner, is contrary to the manifest weight of the evidence. We disagree. When viewed in a light most favorable to plaintiff, the evidence adduced at trial did not so overwhelmingly favor Yarwood that no contrary verdict could stand. Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504. The trial court properly denied defendant Yarwood's motions for directed verdict and judgment notwithstanding the verdict.

■■ To constitute wilful and wanton misconduct, an act which results in injury to others must either be intentional, or it must be performed under circumstances which exhibit a reckless disregard for the safety of others, such as failure, after knowledge of impending danger, to exercise ordinary care to prevent the danger, or a failure to discover the danger through recklessness or carelessness when it could have been discovered through the exercise of ordinary care. Schneiderman v. Interstate Transit Lines, Inc., 394 Ill 569, 69 NE2d 293. An "error in judgment" may also constitute wilful and wanton misconduct under the proper circumstances. Hering v. Hilton, 12 Ill2d 559, 564, 147 NE2d 311.

Yarwood admitted to the investigating officer that he observed the Goedke vehicle approaching in the opposite lanes of traffic, but that he thought that he "had time to make it" across the eastbound lanes into the entrance driveway to the restaurant. It is undisputed that the Goedke automobile could not have been seen until it had reached the crest of the hill to the west of the restaurant, so that the distance between the Goedke and Yarwood vehicles could have been no more than 150 to 200 feet when Yarwood first had the opportunity to observe the oncoming Goedke automobile. There is evidence that

Yarwood commenced his turn when the Goedke automobile was approximately 80 to 85 feet away, and further evidence that the turn was commenced when the Goedke vehicle reached the west restaurant entrance driveway. There is evidence that the Goedke automobile was traveling between 50 and 55 miles per hour as it approached the Yarwood vehicle, well within the posted speed limit on the highway, and also that it was traveling between 40 and 50 miles per hour after the screech of tires was heard.

There is evidence that the Goedke vehicle made skid marks on the highway pavement measuring 50 to 55 feet before the point of impact with the Yarwood vehicle, and that no skid marks were observed which were made by the Yarwood vehicle. There is evidence that the Yarwood automobile was facing in a 45 degree angle, partly into the eastbound lanes of traffic in executing the turn, traveling 20 to 25 miles per hour, immediately prior to the time of impact. There is evidence that a "split second" interval of time elapsed between the sound of screeching tires and the impact of the collision. Although Yarwood stated that he thought that he had ample time to "make it" into the driveway before the oncoming traffic reached him and although it may have been an "error in judgment" in failing to properly estimate the distance, speed, and the like of the oncoming Goedke vehicle, the jury could have concluded from the evidence presented that Yarwood attempted to execute the turn across the oncoming lanes of traffic under such circumstances which rendered his conduct wilful and wanton and in disregard of impending danger.

While Yarwood cites several cases in support of his position in this regard which are distinguishable from the case at bar, it should be noted generally that cases involving wilful and wanton misconduct must be determined on their individual factual situations. Ficht v. Niedert Motor Service, Inc., 34 Ill App2d 360, 181 NE2d 386. The

court in Mower v. Williams, 402 Ill 486, 84 NE2d 435, was concerned with a situation where the defendant exercised due care yet the accident occurred; the court in the later case of Hering v. Hilton, 12 Ill2d 559, 147 NE2d 311, in which defendant was found guilty of wilful and wanton misconduct, distinguished the Mower case on the ground of the care exercised by the defendant in Mower. In Bartolucci v. Falleti, 382 Ill 168, 46 NE2d 980, a tire came off defendant's moving vehicle causing the vehicle to subsequently overturn and resulting in injuries which were the subject matter of the action; defendant had no prior knowledge of the defective condition; this fact alone, without more, cannot be said to have constituted wilful and wanton misconduct on defendant's part. See also Bernier v. Skripek, 86 Ill App2d 118, 229 NE2d 890; Robertson v. New York Cent. R. Co., 388 Ill 580, 58 NE2d 527.

The second point raised by Yarwood is that the trial court erred in allowing Officer Sbarbaro to testify to the conversation he had with eyewitness Bertani at the scene of the accident. The court allowed the officer's testimony into evidence for the reason that Bertani's statement to the officer, that the Yarwood vehicle cut in front of the Goedke vehicle, was part of the res gestae, and for the further reason that counsel represented to the court that Bertani himself would subsequently testify to the same matter. Even if it were to be held that the officer's testimony may have been hearsay, inasmuch as Bertani's statement to him was not made in the presence of Yarwood, nevertheless, admission of the statement into evidence did not prejudice Yarwood because Bertani himself later testified that he observed the Yarwood attempt to execute a left-hand turn in front of the oncoming Goedke automobile. The officer's testimony in this regard is merely cumulative.

Yarwood also states that the trial court erred in admitting the statement made by Yarwood to the Officer

at the scene, that Yarwood saw codefendants' approaching automobile prior to the left-hand turn attempt, but thought that he "could make it" into the restaurant driveway. Officer Sbarbaro was not rendered incompetent by the Dead Man's Act for the reason that he had no interest in the outcome of the litigation. The statement was an admission against interest made by Yarwood and was properly admitted into evidence. Clark v. A. Bazzoni & Co., Inc., 7 Ill App2d 334, 338, 129 NE2d 435; see also Ritter v. Nieman, 329 Ill App 163, 169, 67 NE2d 417.

Yarwood further contends that the trial court erred in refusing to give the jury Yarwood's tendered instruction #5, limiting certain testimony as not binding upon Yarwood, in accordance with the court's earlier oral instruction to the jury at the time plaintiff and defendants Schaefer and Goedke originally testified. The instruction reads as follows:

> "Certain testimony was admitted for a limited purpose only during this trial and this testimony which was admitted for a limited purpose only is not binding upon the defendant, Bertram H. Yarwood."

As shown above, when Yarwood called plaintiff as his witness and questioned her concerning the accident, he waived the incompetency not only of plaintiff but also of codefendants Schaefer and Goedke to testify as to the entire accident. A consideration of the testimony of Goedke and Schaefer reveals that the major portion thereof goes to the circumstances of the accident; only a small portion concerns their actions prior to arriving at the scene where the accident occurred, which in no way involved Yarwood. As to the testimony of plaintiff, the major portion of her testimony relates to a prove up of the injuries and damages suffered by her as a result of the accident. Plaintiff's attorney objected to the instruction during the conference on the instructions on the

ground that it failed to inform the jury what evidence they could consider and what evidence they could not consider. We are of the opinion that the trial court did not err in refusing to give to the jury Yarwood instruction #5.

The final contention raised by Yarwood is that the court erred in giving plaintiff's instruction #23 to the jury, setting forth the issues of the case. Yarwood maintains that the form of the instruction employed is applicable only to an issue of ordinary negligence and cannot be properly adapted to a wilful and wanton issue. The objection to the instruction was not specifically set out in the post-trial motion of Yarwood as required by Ill Rev Stats 1965, c 110, par 68.1(2), and consequently cannot be raised on appeal. Kortlander v. Chicago Transit Authority, 56 Ill App2d 48, 52, 205 NE2d 516. It should also be pointed out that a reading of the instructions as a whole reveals that Yarwood's duties under the evidence presented were clearly defined as was his liability for failure to abide thereby. The court clearly differentiated between the burden of proof borne by plaintiff as to defendants Goedke and Schaefer, and her burden as to Yarwood, and clearly defined the terms "negligence" and "wilful and wanton misconduct." The court did not commit error in giving plaintiff's instruction #23 to the jury.

No questions are raised by plaintiff in her appeal from the judgment against her and in favor of defendants Schaefer and Goedke, other than by way of alternative relief should this court determine that the judgment be reversed and the cause be remanded as to defendant Yarwood. It is therefore unnecessary to answer plaintiff's contentions in this regard.

For these reasons the judgments are affirmed.

Judgments affirmed.

LYONS, P. J. and McNAMARA, J., concur.