GLADYS ZORN, Ex'r of the Estate of Frank F. Zorn, Deceased, Plaintiff-Appellee, *v.* CLAIR ZORN *et al.*, Defendants-Appellants.

Fourth District   No. 4—83—0537

Opinion filed June 5, 1984.—Rehearing denied July 5, 1984.

TRAPP, J., dissenting.

Donna J. Cunningham, of Chicago, for appellants.

Richard E. Quinn and Karen J. Steele, both of McConnell, Kennedy, Quinn & Johnston, Chartered, of Peoria, for appellee.

JUSTICE WEBBER delivered the opinion of the court:

Defendants appeal from an order of the circuit court of Livingston County which denied their motion to vacate judgment and for a new trial. They argue on appeal that the circuit court committed error by excluding certain evidence and by admitting allegedly improper evidence.

Frank Zorn, prior to his death, had been the owner of farm property in Livingston County, Illinois. On August 13, 1980, a purported deed to this property was recorded in Livingston County whereby a remainder interest in the property was conveyed to his three children, defendants herein. The decedent retained a life estate in the property. Soon afterwards in 1980 the decedent and his wife (the plaintiff-executor herein) filed a complaint in the circuit court of Livingston County asking the court to set aside the deed because it had been procured through undue influence or fraud. Frank Zorn died before the cause had come to trial. As a result, the plaintiff filed her second amended complaint on October 28, 1982, in her capacity as executor of her late husband's estate. She sought to have the deed declared invalid and to have the farm property included in the decedent's estate. She claims that the deed is invalid because it was procured by undue influence, or because the decedent was mentally incompetent at the time of the

conveyance.

Before trial, the plaintiff claimed protection under section 8—201 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 8—201), commonly known as the Dead Man's Act. She moved, *in limine*, to exclude possible testimony by the defendants regarding conversations and transactions with the decedent. The plaintiff also moved *in limine* to exclude all evidence of her right to renounce the will and thereby receive one-third of the estate property. The court granted these motions over the defendants' objections.

The trial began on March 17, 1983, before an advisory jury in the chancery division of the circuit court of Livingston County. Two expert medical witnesses testified on behalf of the plaintiff that, due to chronic organic brain disease, the decedent lacked sufficient mental capacity to understand the nature and effect of his actions at the time of the execution of the deed. The plaintiff also introduced testimony to the effect that the gift tax upon the conveyance of a valid deed would be much greater than the inheritance tax levied if the deeded property should pass by the will. Two of the defendants, Clair Zorn and Eunice Wilson, were also called by the plaintiff to testify as adverse witnesses.

After all of the evidence had been presented, the two issues involved were submitted to an advisory jury in the form of special interrogatories. In answering these interrogatories the jury found that the decedent lacked sufficient mental capacity to make the deed in question, and that before and at the time of the execution of the deed, the decedent was under the undue influence of two of the defendants. The circuit court then accepted these findings and entered a decree against the defendants. The defendants timely moved to vacate the judgment, and the court denied the motion on July 13, 1983. A notice of appeal was filed on August 1, 1983.

On appeal, the defendants claim that the plaintiff waived the protection of the Dead Man's Act when she called the defendant Eunice Wilson as an adverse witness and questioned her about an event which took place in the presence of the decedent. At that point, the defendants urge, Wilson should have been allowed to fully explain the event with further testimony, including any conversations with the decedent in that regard. They argue that the trial court's refusal to allow such testimony constitutes reversible error. We agree.

At trial, the plaintiff called the defendant, Eunice Wilson, to testify as an adverse witness pursuant to section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1102). In answer to the questions put to her, Wilson testified that she and her brother

(also a defendant herein) had the deed in question drawn in Pontiac, Illinois. On August 12, 1980, they drove to their father's and stepmother's residence in Wabash, Indiana, for the purpose of having their father sign the deed. Wilson testified that while they were in Wabash she and her brother drove the decedent to a bank. She admitted that they did not pay the decedent for the farm property. She testified that when they left Wabash the deed had been signed. After this testimony defendants' counsel approached the bench and argued that the plaintiff had waived the protection of the Dead Man's Act and requested that the defendants be allowed to testify about certain conversations they had with the decedent several months prior to the trip in question. He argued that these conversations would show that the decedent had requested the defendants to act as they had, thus rebutting the inferences caused by Wilson's limited testimony. The trial court refused to allow such testimony.

Section 8–201 of the Code of Civil Procedure (Dead Man's Act) states in pertinent part:

> "In the trial of any action in which any party sues or defends as the representative of a deceased person or person under a legal disability, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability, except in the following instances:
>
> (a) If any person testifies on behalf of the representative to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability, any adverse party or interested person, if otherwise competent, may testify concerning the same conversation or event."

In our opinion the core issue is the meaning of "event" in the statute cited above. We note first that the present statute reiterates that of 1973 (Ill. Rev. Stat. 1973, ch. 51, par. 2(1)) when a significant change was made by the legislature. The prior statute (Ill. Rev. Stat. 1971, ch. 51, par. 2) referred throughout to "the same conversation or transaction." We assume that the legislature intended some change and it therefore becomes a question as to the meanings of "transaction" versus "event."

We find the following pertinent:

> "One commentator has suggested that because the common meaning of the word 'event' is narrower than that of the word

'transaction,' the 1973 amendment narrowed the waiver provision. Despite the linguistic appeal of this argument, recent changes in the rules of evidence have rarely resulted in less evidence being admissible. It seems unlikely, therefore, that the Illinois legislature intended this result. 'Conversation or event' should be flexibly applied to each case in such a way that each side has a fair opportunity for rebuttal when the opponent, directly or indirectly, introduces evidence regarding a witness' impression of an event or chain of events." Mason & Weisbard, *The Pitfalls of Will Contest Litigation*, 16 J. Mar. L. Rev. 499, 510 (1983).

Etymologically, "transaction" appears to be narrower than "event." "Transaction" is ofttimes linked with its twin, "occurrence," and indicates a specific happening or episode. "Event" is frequently regarded as rising from an antecedent state of things. (Webster's Dictionary of Synonyms 582 (1st ed. 1951).) Thus, Jefferson's immortal lines would have been robbed of that quality if he had commenced, "When in the course of human transactions ***."

Other courts in our sister States of Indiana and Missouri have had occasion to consider the word "event."

"An 'event' is that which follows from the cause (Gore's Case, 9 Coke 80a, 81b, 77 Reprint 853) and it refers not to futurity but has reference to something that has taken place which, however, is not an event until something happens. It becomes an event when it does happen." *McGinnis v. American Foundry Co.* (1958), 128 Ind. App. 660, 666, 149 N.E.2d 309, 312.

In construing its Workers' Compensation statute, the Missouri court said:

"The word accident as used in the statute is given the character of an event which is not limited to any single incident or circumstance. The word event is more comprehensive in meaning, and in this connection is synonymous with the word occurrence. It includes all of the steps or connected incidents from the first cause to the final results. It is not limited in meaning to the initial cause, but may include both cause and effect." (*Rinehart v. F.M. Stamper Co.* (1932), 227 Mo. App. 653, 657, 55 S.W.2d 729, 732.)

See also *Snuggs v. Steel Haulers, Inc.* (Mo. 1973), 501 S.W.2d 481.

■ We are aware that these courts were dealing with a workers' compensation statute, but we find the rationale persuasive. There appears to be no valid reason why the word "event" should have a spe-

cialized meaning in those statutes. We believe that in the instant case "event" includes all of the connected incidents and conversations leading up to the signing of the deed and that it was error for the trial court to deny them admission.

Although it was decided under a prior statute, the case of *Perkins v. Brown* (1948), 400 Ill. 490, 81 N.E.2d 207, bears many striking similarities to the case at bar. There the defendant wished to explain his testimony as an adverse witness by testifying to conversations which he had had with the decedent in the months prior to her death. The supreme court said:

> "The justice of this rule is too apparent to require discussion. It would be palpably unjust if a litigant were permitted to call an adverse party and examine him as to one fact or phase of a transaction in his favor and then invoke the bar of the statute when the party examined sought to testify further with regard to the same transaction for the purpose of explaining his former testimony or correcting an erroneous impression left thereby. Section 60 of the Civil Practice Act, (Ill. Rev. Stat. 1947, chap. 110, par. 184,) giving the litigant the right to call the adverse party and examine him as if under cross-examination, in no way abrogates the rule that where a party calls a witness and examines him as to a particular part of a transaction, the other party may call out the whole of the transaction bearing upon or tending to explain or qualify the particular part to which the examination of the other party was directed. Appellants having called Brown to testify and elicited from him the statement that he had received a deed for the property from the deceased and that he did not pay her for it or buy it from her, it was entirely proper to permit him to explain the entire transaction with the deceased, including the conversations had by her with him concerning the conveyance of the property, as such conversations were a part of the transaction inquired about by appellants." 400 Ill. 490 497, 81 N.E.2d 207, 211.

Wilson's further testimony, and perhaps that of the other defendants, could have rebutted evidence of undue influence and could have served as evidence of the decedent's competency at the time of making the deed. Its exclusion constitutes reversible error.

We appreciate the concerns voiced by Justice Trapp in his dissent, and we will not be understood as writing a blank check for the admission of all possible testimony. The matter must be handled on a case-by-case basis, each one dependent on its own facts, and, of course, the

basic principle of relevancy will act as a restraint upon unbridled application of the rule. We hold that on the facts of this case, it was error to exclude the evidence.

On appeal, defendants also claim that Clair Zorn and Eunice Wilson were competent to testify about conversations and events in the presence of the decedent concerning the deed because such testimony would have been against their pecuniary interest. They argue that these defendants would have benefited monetarily if the property involved here had passed by will.

Under the will, Clair Zorn and Eunice Wilson each received one-half of the property, subject to certain payments to Roger Zorn and his children. Under the deed, each of the defendants would receive one-third of the property. However, since no evidence was received as to the amount of the payments owed to Roger Zorn and his children, there is no basis upon which the defendants' claim can be substantiated. Moreover, this argument was not even raised in the court below. The defendants' argument is without merit.

■ The defendants next claim that they should have been allowed to present evidence of plaintiff's personal interest in the litigation. In granting the plaintiff's motion *in limine*, the circuit court stated that evidence that plaintiff might possibly renounce the will would not be relevant to the two issues before the advisory jury, namely, the issues of undue influence and the incompetence of the decedent. Defendants objected to this ruling on the basis that such evidence would be relevant to show plaintiff's interest in the litigation generally.

While evidence of personal interest is relevant to impeach a witness' credibility, it does not follow that the defendants should be allowed to present such evidence as part of their case in chief. This is what the trial court wished to prevent by its ruling before trial, and to that extent the ruling was correct. The plaintiff, in fact, was not called to testify until rebuttal evidence was being presented. At that point, the defendants did not attempt to impeach her testimony or to question the extent of the court's ruling. The plaintiff's testimony was brief and dealt only with uncontested matters such as the date of her marriage, her husband's age at the time of his death, and a description of their home. Her credibility in this regard is unquestioned. Therefore, any possible error in the trial court's ruling could not have prejudiced defendants and was harmless.

■ Finally, defendants contend that they were prejudiced at trial by the admission of erroneous and irrelevant evidence. They claim that the plaintiff's evidence of possible gift tax consequences as compared to the estate tax consequences for the property involved was

improperly admitted. It is apparent from the record that the trial court agreed with defendants. Before the closing arguments were heard, the court, on its own motion, instructed the jury that testimony concerning the possible tax consequences was stricken and should be disregarded. As a general rule, striking out erroneously admitted evidence cures the error in all but extreme cases. (*McKenna v. Chicago City Ry. Co.* (1921), 296 Ill. 314, 129 N.E. 814.) This would not appear to be an extreme case.

At any rate, the defendants have waived any error in this regard since they failed to object to this testimony at trial. (*Graves v. North Shore Gas Co.* (1981), 98 Ill. App. 3d 964, 424 N.E.2d 1279.) Furthermore, we would anticipate that this type of testimony will not recur when this case is retried.

For all of the foregoing reasons, the judgment of the circuit court of Livingston County is reversed and the cause is remanded for a new trial in accordance with the views expressed in this opinion.

Reversed and remanded.

MILLS, P.J., concurs.

JUSTICE TRAPP, dissenting:

The parties and this court agree that the admissibility of the testimony in issue is to be determined under the language of section 8—201 of the Code of Civil Procedure. (Ill. Rev. Stat. 1983, ch. 110, par. 8—201.) The opinion determines the issue by carrying forward an interpretation of section 2 of the former act in regard to evidence and depositions (Ill. Rev. Stat. 1971, ch. 51, par. 2), frequently termed the Dead Man's Act.

A notable distinction or change is that the words "same transaction" of the former Evidence Act are replaced by the words "same event" in the Code. Actually, the change of terms was made in an amendment of the Evidence Act effective in 1973. As a matter of language, the respective terms do not have identity or comparability in scope or use.

In Webster's Third International Dictionary "an event" is described as an occurrence "occupying a restricted portion of *** space or time" or a "happening represented by a point." It is thus restricted to a particular happening at a particular time. This particularity is emphasized by requiring that the testimony relate to "the same conversation or event." A first synonym of the word "same" is "identical."

The same dictionary described the word "transaction" in broader terms of prosecuting negotiations or carrying on business. It is not necessarily limited as to specific time or place. Thus, it has been said that a series of "events" might constitute a "transaction." (Comment, *Illinois' Amended Dead Man's Act; A Partial Reform*, 1973 U. Ill. L.F. 700, 711.) Since the amendment of 1973, which substituted the words "same event" for the words "same transaction," legal writers have debated the desired merits and scope of the Dead Man's Act. In the recent enactment of section 8—201 of the Code of Civil Procedure, effective July 1, 1982, the legislature made considerable change of language which generally simplified the statement of the statute. It did not, however, abandon the narrow connotation of the words "same event" and return to the broader interpretation of "same transaction" found in the cited *Perkins v. Brown* (1948), 400 Ill. 490, 81 N.E.2d 207.

The majority opinion finds that a defendant was called as an adverse party "about an event" and concludes that that " 'event' includes all of the connected incidents and conversations leading up the signing of the deed ***," so that such party may thereafter testify upon the entirety without particularity concerning that which was asked. The construction of the companion words "same conversation" in the statute suggests an apparent anomaly. If the personal representative calls a witness to testify to the "same conversation," does this also permit testimony as to the preceding and subsequent "conversations" without any regard to the span of time, identity, or place in the use of the word "same"?

There has been long debate concerning the problems inherent in the conflicting evidentiary goals, where an original party has died or is incompetent. Neither the legal profession nor the legislature have found a better resolution than to limit the area of testimony to the identity of conversation or event to which any person testifies in behalf of the representative. These views expressed in dissent are deemed consistent with the opinion in *Manning v. Mock* (1983), 119 Ill. App. 3d 788, 457 N.E.2d 447.

I would affirm the trial court.