Steven J. Sterba and Deloris M. Sterba, Plaintiffs-Appellees, v. First Federal Savings and Loan Association of Elgin, an Association of the United States of America, Defendant-Appellant.

Gen. No. 65–143.

Second District.

December 29, 1966.

O'Brien, Burnell, Puckett and Barnett, of Aurora, for appellant.

Carbary, Carbary & Chapski, of Elgin, for appellees.

MR. PRESIDING JUSTICE MORAN delivered the opinion of the court.

A jury found in favor of the plaintiffs and from a denial by the trial court of defendant's motion for a directed verdict and/or for a judgment non obstante veredicto, the defendant appeals.

For the purpose of this appeal it will be necessary to refer to only one plaintiff, Deloris M. Sterba, and the sole question to be answered is whether the plaintiff was guilty of contributory negligence as a matter of law.

The factual situation is not controverted. The defendant, First Federal Savings and Loan Association of Elgin, owned and occupied the main floor and basement of its building. It leased the second floor to other tenants. Immediately west and adjacent to the building it operated a parking lot attended by one Milton McNabney, one of its employees. The lot was reserved for customers of both the defendant and its tenants. On the parking lot was a sentry type hut used by McNabney during inclement weather. The lot was composed of 15 parking spaces, one of which was located between the hut and the northwest corner of the building. This space, on its east end, was equipped with a cement collar or bumper which was attached to the ground. The bumper was two feet from the building; and ran parallel to it. From 9:00 o'clock a. m. to 5:00 o'clock p. m., the defendant had McNabney park his own automobile in this particular space.

A wooden awning, used to shield the sun from shining through the sole window, was attached to the hut. This awning protruded outward about two feet from the hut. The defendant testified that the bottom of the awning was approximately five feet nine and one-half inches from the ground.

The plaintiff had on prior occasions used the lot about six times a year. The previous visits were for the purpose of delivering her mortgage payments to the defendant or to visit the defendant's tenants. On these former visits she was always met in the middle of the lot by the attendant who would give her a ticket and upon her return with the stamped ticket she would again be met by the attendant who would collect the ticket. She testified that on former occasions there was always the attendant's car parked in this one space and she never had occasion to walk near the building.

On April 25, 1963, the plaintiff, whose height was between five feet seven inches and five feet eight inches, parked her car in defendant's lot for the purpose of visit-

ing one of defendant's tenants on business. She entered the building from the northwest corner at about 5:10 p. m. Shortly thereafter, she emerged from the same entrance, walked around the corner, "possibly stepped over it" (the cement bumper), proceeded through the parking space usually occupied by the attendant, and her head came in contact with the awning over her left eye and temple. She was rendered unconscious. From the time she rounded the corner of the building to the time she had struck her head, she had taken four or five steps. She testified that it was a clear day; that there was nothing to obstruct her view in front of her; that she was not carrying anything; that she was not in any particular hurry nor was she walking hurriedly; that she did not recall in which direction she was looking as she rounded the corner other than probably toward her car, which was beyond the hut and that she did not trip or fall over anything. Since the accident, the defendant has replaced the wooden awning with a canvass awning.

The defendant's President, called under section 60 of the Civil Practice Act (c 110, § 60, Ill Rev Stats 1963), testified as follows:

"Q. Now, what other parking spaces were there aside from the twelve lined up facing south?

"A. We have two parking spaces on the north part of the lot and one in front of the building, and this was done with sort of a protective . . .

"Q. Go ahead.

"A. . . . for a protection for just the type of thing that happened here now."

And, later he gave the following testimony:

"Q. Thank you. Did your association have any warning signs near the shanty there to warn cus-

tomers? Were there any signs whatever there on this date?

"A. No.

"Q. Was the area of the shanty chained off with any device with either a chain or post?

"A. We have a car there, sir.

"Q. You did?

"A. During the time we have our attendant park his car there.

"Q. Why?

"A. Just to prevent accidents.

"Q. So people won't walk into the awning, is that right?

"A. No.

"Q. Isn't that one of the purposes?

"A. I couldn't say. It would be one of the purposes.

"Q. It was one of the purposes for Mr. McNabney parking his car there, is that right?

"A. I wouldn't say that. It is much handier for him.

"Q. Is it?

"A. Yes. He can get from his car to his shanty in the rain or snow or wind and cold.

"Q. Mr. Jurs, one of the purposes . . .

"A. It would be one."

Steven J. Sterba, husband of the plaintiff and one of the plaintiffs herein, testified as to a conversation he had

with McNabney about a week following the accident. McNabney told him that he parked his car alongside the front to keep the public away from his little shanty; that others have brushed against it and that this is one of the reasons why his automobile was parked in this space.

It is defendant's position that if the plaintiff had looked, she would have seen the awning since nothing in the evidence discloses that her view was obstructed, and therefore, she was, as a matter of law, guilty of contributory negligence. In support of its position the defendant has assisted the court with various citations with which we have no quarrel as applied to the facts in their respective cases. Nevertheless, we are influenced by a more recent Supreme Court case entitled Swenson v. City of Rockford, 9 Ill2d 122, 136 NE2d 777 (1956), wherein the same proposition of law was urged. In that case, the plaintiff who had actual knowledge of the defect that caused her injury—a fact not present in the case at bar —was allowed recovery. The court stated at page 127:

> "The use of a defective sidewalk by a person who has knowledge of the defect is not contributory negligence per se, and if, while walking upon that sidewalk, such person is in the exercise of ordinary care for his or her safety, there may be a recovery in case of an injury. (Wallace v. City of Farmington, 231 Ill 232; City of Mattoon v. Faller, 217 Ill 273.) Ordinary care has been defined to be that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances." (Citations omitted.)

The court further stated on pages 127, 128, as to what would constitute contributory negligence as a matter of law when it said:

> "To be guilty of contributory negligence as a matter of law it must appear that all reasonable minds would

384

agree that assuming the facts as presented by the plaintiff and all reasonable inferences that may be drawn therefrom in her favor, plaintiff is nevertheless guilty of contributory negligence." (Citations omitted.)

■ The question of contributory negligence is ordinarily a question of fact for the jury and becomes a question of law only when all reasonable minds would reach a conclusion that there was contributory negligence. Swenson v. City of Rockford, ibid.; Shepard v. City of Aurora, 5 Ill App2d 12, 19, 124 NE2d 584 (1955); Ziraldo v. W. J. Lynch Co., 365 Ill 197, 199, 6 NE2d 125 (1936).

■ In the case at bar the plaintiff, from the defendant's version, would first have to look down in order to avoid the cement bumper, then look up immediately to avoid the awning. We are not of the opinion that such a duty of freedom from contributory negligence would be exacted from our mythical prudent person. Although she was not looking up at the precise moment of the incident, she was not necessarily required, as a matter of law, to be looking up at that exact moment. This was a fact to be considered by the jury, together with all other facts and circumstances, in arriving at their verdict. Swenson v. City of Rockford, supra; See also Trojan v. City of Blue Island, 10 Ill App2d 47, 51, 134 NE2d 29 (1956).

In this case, the contributory negligence of the plaintiff, if any, was put to the jury and we cannot say as a matter of law that the thirteen persons, the twelve jurors who heard the evidence and the judge who heard the evidence and the post-trial motion, were unreasonable in reaching the conclusion that the plaintiff was not guilty of contributory negligence.

Judgment affirmed.

DAVIS and ABRAHAMSON, JJ., concur.