John Reith, Plaintiff-Appellant, *v.* General Telephone Company of Illinois, Defendant-Appellee.

(No. 73-270; )

Fifth District—October 2, 1974.

Elmer Jenkins and Jeff Troutt, both of Benton, for appellant.

Glenn E. Moore and Terry R. Black, both of Mt. Vernon, for appellee.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Plaintiff appeals from a judgment of the Circuit Court of Perry County entering summary judgment in favor of the defendant in a personal injury suit.

The defendant General Telephone Company, to accomplish the authorized installation of its underground cable, signed an agreement with the Harris-McBurney Construction Company which by its terms engaged the latter to excavate and install said cable along Highway 154 abutting plaintiff's property. The contract agreed to by defendant and Harris-McBurney allegedly made the latter an independent contractor who had the sole control over the work of excavation.

The complaint alleges that the plaintiff was injured when he fell into a hole dug by Harris-McBurney because no warning or barricades were placed around the hole to prevent an injury of persons such as the plaintiff who used the right-of-way in which the hole was dug.

The complaint alleged that it was the duty of the defendant to:

> "* * * exercise reasonable care in the excavation and installation of said wire and cable and the maintenance thereof, so that said site would not become and remain dangerous and unsafe, and thus endanger the life and limb of persons, including plaintiff, using the right-of-way, * * *."

The defendant maintained below that it could not be held liable for the negligent acts of the independent contractor, Harris-McBurney, since the defendant had no control over the course of excavation work or the site thereof.

The trial court granted the motion for summary judgment on that basis. The only question presented for review is whether the trial court correctly entered a summary judgment in favor of the defendant.

Section 57 of the Civil Practice Act (Ill. Rev. Stat., ch. 110, par. 57 (2)) provides that defendant may, at any time, move for summary judgment in his favor; that the opposite party may file counter-affidavits and that the judgment sought shall be rendered forthwith if the pleadings, depositions and admissions on file, together with any affidavits, show no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law.

The affidavit of James Samples, construction superintendent for the defendant, averred that defendant did not do any of the construction work it was charged in the complaint with performing, and further averred that the work was done by Harris-McBurney as an independent

contractor. The affidavit incorporated by reference the contract between the defendant and Harris-McBurney Company.

Reith filed a counter-affidavit stating that the allegations in the complaint were true; that he observed and talked with employees of the defendant and that they admitted their responsibility for the work.

■ It is well settled that the right to summary judgment must be free from doubt and determinable solely as a question of law and if there is a disagreement on any material fact or facts, the motion should be denied. To warrant the granting of a motion for summary judgment based on discovery depositions, a fact or facts that would bar recovery as a matter of law must be admittedly so clear and unequivocal that such admissions are not open to dispute or different interpretations. *Simaitis v. Thrash*, 25 Ill.App.2d 340.

In the instant case there are no discovery depositions or any other facts that would bar recovery as a matter of law except the contract and the affidavit of Samples. In our opinion the affidavit of Samples, even if uncontradicted, only declared what he in fact interpreted as his duties according to this contract; therefore, the affidavit does not dispel all doubt as to the interpretation of the said contract.

■■ In other words, it is the right or duty to supervise and control, and not the exercise of the right that determines the relationship of principal and agent or of contractor and independent contractor. The relationship of principal and agent exists if the principal has the right or duty to supervise and control and to terminate the relationship at any time, even though he does not exercise that right. *Hartley v. Red Ball Transit Co.*, 344 Ill. 534, 539; *Lawrence v. Industrial Commission*, 391 Ill. 80, 87; *Darner v. Colby*, 375 Ill. 558; *Shannon v. Nightingale*, 321 Ill. 168.

■■ The single material fact relied upon by the trial court in this case was that the contract between the defendant and Harris-McBurney Company created the independent contractor relationship between them. The first question for review is, therefore, whether the court's interpretation of that contract is free from doubt. If the court's interpretation could not be considered so clear as to be undisputed, then the question should be submitted to the jury. *Yuhas v. Allis-Chalmers Distribution Service Corp.*, 12 Ill.App.3d 814.

The contract contains the following language:

> "*ARTICLE I*: The Contractor agrees to furnish the labor, machinery, tools and motor vehicles requisite to perform outside Telephone Plant Construction, Maintenance and Central Office Equipment Installation as directed by the Company.
>
> PROVIDED, however, that the Contractor under no circum-

stances shall employ more crews than authorized by the Company to perform the above described work, and will not have more men on each crew than are specifically ordered by the Plant Director of the Company, and

PROVIDED, further that the Company expressly retains its right to assign similar work in the same area or on the same job to other contractors or its own employees, as it so desires, within the terms of this Agreement.

\* \* \*

ARTICLE IV: The Company agrees to pay the Contractor for the work described in Article I in accordance with the following terms and conditions:

\* \* \*

Section 2. The Contractor shall keep an accurate record of all expenditures for labor by a system of accounts and records satisfactory to the Company, and further, the Contractor agrees that all such records shall be subject to audit by the Company at all reasonable times. The Contractor agrees to furnish a daily work report for each crew and forward it not later than the following day to a Company Supervisor specified by the Company. \* \* \*

1. For each employee—name, title and number of hours time chargeable to each project order number and exchange number.

\* \* \*

4. The time crew starts and stops work in both forenoon and afternoon, and also time of stopping and starting work when work stoppage is caused by inclement weather or other reasons.

5. Explanation for crew not working the full day when full time is not worked.

6. Location of work by streets, highways, and pole numbers.

7. Units of work completed. \* \* \*"

In our opinion, the contract between the defendant and Harris-McBurney discloses a great deal of control by the defendant over the work to be performed by Harris-McBurney. Therefore, the trial court erred in holding as a matter of law that Harris-McBurney was an independent contractor on the basis of the contract.

■■ We reverse for another reason. The defendant had an affirmative, non-delegable duty to take precautions against the possible and probable injuries around an excavation site constructed through its franchise or permission obtained from the state and local authority. This duty, being non-delegable, remains on the defendant irrespective of a contract

that might make Harris-McBurney Construction Company an independent contractor, vis-a-vis its relationship to the defendant.

An individual or a corporation cannot evade liability for negligence by delegating performance of work to an independent contractor where such individual or corporation is carrying on an activity involving danger to others, under a franchise or license granted by public authority and subject to certain obligations imposed by public authority. (57 C.J.S. *Master and Servant* § 591(b) (1948).) This rule is often applied where obstructions and excavations in streets and highways are made pursuant to authority derived from and subject to conditions and requirements imposed by a statute, permit or license.

In *Chicago Economic Fuel Gas Co. v. Myers*, 168 Ill. 139, the supreme court said at pages 146-147:

> "[T]he appellant was a corporation authorized by its charter to deal in gas. The proof shows, that the permit to do all the work connected with the laying of the gas-pipes was issued by the department of public works of Chicago to the appellant company, and not to the construction company. The appellant was thus engaged in the work of laying pipes to transmit gas through the public streets of the city under a charter of the State of Illinois, and under a permit from the city of Chicago. It cannot, therefore, avoid liability for acts under its corporate franchises by simply letting a contract to a construction company. Even though the person who causes the injury is a contractor, he will be regarded as the servant or agent of the corporation, for whom he is doing the work, if he is exercising some chartered privilege or power of such corporation with its assent, which he could not have exercised independently of the charter of such corporation. 'In other words, a company, seeking and accepting a special charter, must take the responsibility of seeing that no wrong is done through its chartered powers by persons to whom it has permitted their exercise.' [Citations.]"

Similarly, the case of *North Chicago Street R.R. Co. v. Dudgeon*, 184 Ill. 477 (1900), reiterates this principle of law. In that case the defendant railroad was engaged in the repair and relaying of certain rails, tracks and roadbed which it used, and had placed large quantities of stones and granite blocks along the streets near the tracks on which it operated its cars. The plaintiff was a conductor of one of the railroad cars. He was injured when thrown upon a pile of stones while aboard a train and he rolled from the stones under the train. The railroad denied recovery because the work of repairing its roadbed and track was being done by an "independent contractor" free from all control and

supervision on the part of the defendant company. The court noted that the company was chartered by the State of Illinois to operate a street railroad along the street in question and that the work of repair was being done upon written authority of the commissioner of public works of the city of Chicago as given to the railroad. The supreme court, in affirming a judgment against the defendant railroad company, cited many cases wherein the courts held that one who obtains a license from the municipal authorities to encumber the streets shall not shield himself from liability for injuries caused by acts that unlawfully encumber the streets through the negligence of an independent contractor.

Defendant telephone company must have the permission of local and state authorities for the installation of its cables. Section 9—113 of the Highway Code (Ill. Rev. Stat., ch. 121, par. 9—113), states in part as follows:

> "No ditches, drains, track, rails, poles, wires, pipe line or other equipment of any public utility company, municipal corporation or other public or private corporation, association or person shall be located, placed or constructed upon or along any highway, or any township or district road, other than a highway or road within a municipality without first obtaining the written consent of the appropriate highway authority as hereinafter provided for in this Section."

Section 4 of "An Act to revise the law in relation to telegraph companies" (Ill. Rev. Stat., ch. 134, par. 4), also imposes the condition that a telephone company seek the permission of local authorities for the erection or installation of their lines and fixtures on any public ground including streets. This permission granted to the telephone company for the installation of its cables along a public right-of-way must, therefore, be considered a license. Although with facts substantially different from the ones at issue here, the case of *People ex rel. Rockwell v. Chicago Telephone Co.*, 245 Ill. 121 (1910), held in part as follows at pages 134-35:

> "In granting to the Chicago Telephone Company a license to construct its poles, wires and other fixtures in the streets and alleys of the town, the Board of Trustees of the town of Cicero was exercising the power to regulate and control the use of the streets and alleys within the limits of the town which had been delegated to it by the General Assembly. It was exercising a legislative function as a governmental agency of the State, and a grant was made by the town in its governmental and not in its proprietary capacity. [Citations.] The grant thus made was a license which, when accepted by the telephone company, became a contract between

the town, as a governmental agency of the State, and the telephone company.'

A license is a personal and exclusive grant or privilege conferred upon the licensee. It is not assignable unless specifically stated to be so. The consent or license given by the public authorities herein, who maintain the public rights-of-way for the people's safe use, was to the defendant alone and not to Harris-McBurney Company.

Furthermore, the implied conditions of this license would reasonably include the duty of a licensee to keep the construction site along a public right-of-way safe for passers-by. The defendant telephone company had the duty to install the lines or cable in such a manner as to avoid interfering with the plaintiff's right to a safe use of the streets and sidewalks. Although the defendant could delegate the actual work of installation, it is clear that the duty or responsibility to keep the public ways safe was non-delegable since it was a condition of the license held by the defendant.

■■ Moreover, the defendant as licensee must be presumed to have been on notice that there was a danger incident to the excavation along a public way, and was thereby bound to maintain the excavation in such a manner as to reduce the risk to passers-by using the way. The plaintiff who was injured while using the public way should therefore look to the one officially held responsible for the excavation in addition to the one who actually dug the hole.

For the reasons stated, the judgment of the trial court is reversed and this cause is remanded for trial.

Reversed and remanded.

EBERSPACHER and CREBS, JJ., concur.