CHARLES COMPER, Plaintiff and Counterdefendant-Appellee, *v.* RALPH JONES, Defendant and Counterplaintiff-Appellant.

Fifth District   No. 79-70

Opinion filed January 17, 1980.—Rehearing denied February 26, 1980.

O'Connell & Waller, of Belleville, for appellant.

Edward J. Kionka, of Columbia, and Jerald J. Bonifield, of Norton, Bonifield & Associates, P. C., of Belleville, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

This action was brought by plaintiff, Charles Comper, in the Circuit Court of Marion County to recover damages arising out of a motor vehicle collision allegedly caused by the negligence of defendant, Ralph Jones. The jury returned a verdict in favor of plaintiff in the amount of $50,000 upon which judgment was entered. From the denial of his post-trial motion, defendant appeals.

The accident occurred on Thanksgiving day on Green Street Road near Salem shortly after plaintiff, who was driving a tractor with a homemade trailer attached thereto, had made a left hand turn from the southbound lane of Brewery Hill Road onto the eastbound lane of Green Street Road. Defendant's vehicle, a 1975 Cadillac, had been proceeding in an easterly direction on Green Street Road when it struck the left rear portion of the homemade trailer. As a result of the collision, plaintiff suffered personal injuries and his tractor and trailer were extensively damaged. At the time of the accident, the pavement was dry and there were no obstacles obstructing the vision of the drivers.

As much of the testimony concerning the occurrence of the accident is in conflict, it is necessary to recount the testimony of the participants and various eyewitnesses. Mr. Comper testified that after finishing his Thanksgiving dinner he drove his tractor and trailer attachment to a wooded area where he cut down two birch trees and loaded the cut up pieces from one of the trees onto the trailer, which was not equipped with any lights or reflectors. Noticing that it was "getting fairly late," Comper

realized that he "better get home" because he did not want to drive on Green Street Road in the dark. Although he stated that the sun was still shining brightly, he turned on the headlights, rear flasher and taillights of the tractor and proceeded onto Brewery Hill Road in the direction of Green Street Road. At the intersection of the two streets, Mr. Comper stopped at the stop sign, looked both ways, and observed Jones' vehicle by a bridge on Green Street Road, which bridge was approximately 800 feet west of Brewery Hill Road. He then turned left onto Green Street Road noticing that the flashing lights of the tractor were operating properly. Thereafter, according to Comper, "everything went blank" until he found himself in the emergency room of the hospital.

Mr. Comper estimated the distance from the ground to the top of the rear caution light on the tractor as 56 inches and further estimated the maximum speed of the tractor without a load as 20 miles per hour. The trailer was approximately 8 feet 4 inches long, 5 feet 2 inches wide and 2 feet deep. Comper testified that the wood was piled "no more than two feet off the bed." Over objection of defendant's counsel, Comper testified that at the time of the accident a red flag was attached to the rear of the trailer.

Lola Mildred Comper, plaintiff's wife, testified that she went looking for her husband on Green Street Road because it was "near sundown" and her husband should have already returned home. She arrived at the scene of the accident after the ambulance had arrived to take her husband to the hospital.

Ralph Jones testified that he attended Thanksgiving dinner at the home of his sister in Coulterville. At 4:20 p.m. he and his parents left Coulterville and headed towards their home in Salem. The accident occurred approximately 59 miles from the sister's residence.

Jones indicated that the headlights of his automobile were on as he drove east on Green Street Road approaching the Brewery Hill Road intersection. He was apparently traveling within the speed limit when he suddenly saw what appeared to be a stationary homemade two wheel trailer which had been left in the roadway without any lights. The bed of the trailer, according to Jones, was approximately 2½ to 3 feet off the ground and was loaded with wood in the shape of a pyramid 4 to 5 feet high. Jones testified that he first saw the trailer within three seconds of impact. He intended to "get away from the trailer and pull around it," but hit the rear of the trailer as he swerved to the left while applying the brakes "with everything he had." The speed of defendant's automobile at the time of impact was approximately 35 to 45 miles per hour.

Jones did not see the tractor prior to the accident and first observed it rolling off the roadway from the force of the collision. He noticed that the headlights and a rear yellow light on the fender were on, but indicated

that the yellow light was not flashing. Jones did not see a red flag at the scene of the accident.

Olen Hiltibidal and Katherine Ann Hiltibidal were driving south on Brewery Hill Road behind plaintiff's tractor and trailer. Olen testified that he first noticed the tractor when he saw its flashing yellow light one block in front of him on Brewery Hill Road. As there was a slight curve in Brewery Hill Road, Olen observed the flashing light from "a slight angle to the left." He did not realize there was a trailer until plaintiff started to turn left onto Green Street Road. Apparently, Olen saw a red flag before he saw the trailer. He testified that when he first saw the wagon none of the materials piled therein blocked his view of the tractor's yellow light.

When Olen stopped at the intersection, he observed the tractor proceeding eastbound on Green Street Road at a speed of 8 to 10 miles per hour. The sideboards of the trailer did not obstruct his vision of the tractor's lights and he was able to see the glow of the headlights.

As Olen turned his head to the right, Katherine, then his fiance and now his wife, yelled "Oh, no. He isn't going to make it." Olen quickly turned to his left and witnessed the collision. According to Olen, defendant's car pulled to the center of the road as if to pass plaintiff's vehicle and then swerved back to the right and hit the trailer. Olen was not certain whether defendant was trying to pass or merely avoid the trailer, but assumed that defendant was attempting to pass to the left side of the vehicle. Olen indicated that at the time of the collision a car had been approaching on Green Street Road from the opposite direction. Following impact, the wagon appeared to stay in place while the tractor "made a sharp right turn, went down the ditch in an embankment, through a fence and veered off at an angle, left the roadway completely." Plaintiff was thrown from the tractor and was found in the ditch.

Olen also testified that immediately prior to the accident, defendant was driving at a speed of 45 to 55 miles per hour. In his opinion, it was "dusky dark" outside and "you needed your lights on."

Katherine testified that she initially saw a flashing yellow light one block directly south of her husband's vehicle on Brewery Hill Road and believed it belonged to a city truck. As she and her husband drove closer to the light, she realized that it was attached to plaintiff's tractor and that the tractor was towing a wagon which had a flag at its end. She noticed that logs were piled in the wagon but claimed that they did not at any time block her vision of the yellow tractor light.

Soon after plaintiff made the left turn onto Green Street Road, she saw defendant's car approach the trailer from behind. According to Katherine, it appeared that defendant was trying to "go around" the trailer; however, he pulled back into the eastbound lane of traffic as a car approached from the east. He then hit the trailer in the back. Katherine

added that at the time of impact the flashing yellow lights of the tractor were in operation.

According to Katherine, the collision occurred approximately one-half block east of the Brewery Hill intersection where she and her husband were apparently waiting to turn onto Green Street Road. Although Katherine had stated in a deposition that at the time of the accident it was "full dark" outside, she testified at trial that "it wasn't pitch dark. It was dusk." She added, "I didn't mean it was so dark that you couldn't see nothing. I mean it was dark enough you had to have your headlights on."

Lulu and Jesse Jones, defendant's parents, testified on behalf of defendant and corroborated much of his testimony. They both testified that it was dark outside at the time of the collision; that there were no lights or reflectors on the trailer; and that they did not see a red flag. Mrs. Jones indicated that the distance from the street to the top of the wood piled in the trailer was approximately 6 to 8 feet high while her husband estimated that distance at 7 to 8 feet. Mr. Jones also testified that he never saw a flashing amber light and added that he did not see the trailer until immediately prior to impact.

Stanley Pokojski, a retired police officer, also witnessed the collision. Mr. Pokojski, who lived near the scene of the accident, left his home at 6 p.m. and was proceeding west on Green Street Road when he saw a vehicle coming towards him which he believed initially was another automobile. He then saw a second vehicle heading in an easterly direction and thought that it was going to move into his lane of traffic and pass the first vehicle. Pokojski applied his brakes and saw the second vehicle hit the front vehicle in the back end.

Pokojski then realized that the front vehicle was a tractor and that it was pulling a trailer. He did not remember seeing any lights, reflectors or emblems on the tractor except for the headlights, and did not recall seeing a flashing amber light as the tractor veered to the right after the collision.

Pokojski stated that he had a difficult time locating plaintiff following the accident because of darkness and added: "it was too dark to see him."

Michael L. Mobley, an Illinois State trooper, investigated the accident. His report indicated that when he arrived at the scene, it was dark and the weather was clear. The road surface was dry and in good condition and the speed limit was 55 miles per hour. His report also stated that there was a red flag on the trailer. Mobley testified that the point of impact was 135 feet from the northeast corner of the intersection of Brewery Hill and Green Street Roads. Mobley also discovered 18 feet of skid marks from the front right tire of defendant's automobile ending at the point of impact.

On appeal, defendant contends first that the trial court erred in failing to direct a verdict in his favor. He argues that the evidence viewed in the light most favorable to plaintiff was insufficient to prove defendant's negligence and that plaintiff was guilty of contributory negligence as a matter of law. We disagree. Under the often-cited case of *Pedrick v. Peoria and Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14, "verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." This standard is not limited to the issue of defendant's negligence but applies also to plaintiff's possible contributory negligence. *Connolly v. Melroy* (1978), 63 Ill. App. 3d 850, 380 N.E.2d 863.

● ▓ In the instant case, the record discloses conflicting evidence, which, when resolved most favorably to plaintiff, clearly demonstrated that a directed verdict or a judgment *n.o.v.* for defendant was inappropriate. The resolution of the conflicting testimony on such matters as the parties' ability to see, the presence or absence of a flashing yellow light on the fender of the tractor, the visibility of the flashing light if in fact it was operating and the visibility of the trailer, would certainly have a substantial, if not conclusive, impact on the outcome of the controversy. In a case where substantial factual disputes arise concerning either defendant's negligence or plaintiff's exercise of due care, it is the function of the jury to reconcile the conflicting testimony of the witnesses. See *Shatkus v. Checker Taxi Co.* (1969), 111 Ill. App. 2d 1, 249 N.E.2d 704.

Although the evidence warranted submitting the case to the jury, we nevertheless believe certain rulings of the trial court and the refusal of certain instructions of defendant denied him a fair trial because he was unable to present fully and completely his theory of the case to the factfinder.

The record discloses that during the cross-examination of Olen Hiltibidal, defense counsel asked the witness various questions about slow-moving vehicle emblems. Out of the presence of the jury plaintiff objected to this line of questioning and moved to prevent defendant from making any further reference to these emblems. In support of this motion, plaintiff argued that section 12—709 of the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, par. 12—709) regarding slow-moving vehicle emblems, requires the placement of such emblems on plaintiff's tractor during daylight hours only. He argued that it was unnecessary for an emblem to be placed on the tractor at night because under section 12—205.1 of the Code (Ill. Rev. Stat 1977, ch. 95½, par. 12—205.1) the tractor would be required to have a flashing amber light.

The court granted plaintiff's motion stating:

"I think that the flashing light is applicable after dark and that the slow moving emblem is required in the day light, but you don't have to have both. Otherwise * * * I'd have to say that at night you would have to have both but in the day time you only had to have the emblem and not the light. I don't think that is intended."

Prior to the close of plaintiff's case, defense counsel indicated that he was planning to introduce a slow-moving vehicle symbol into evidence. Thereafter, following the testimony of the last defense witness, defense counsel sought admission of one of the emblems. Although he conceded that he could not demonstrate that the emblem conformed to American Society of Agricultural Engineer Standards (ASAE) as required by statute (see Ill. Rev. Stat. 1977, ch. 95½, par. 12—709), he stated that he had a witness who would testify that he had observed these emblems on tractors, trailers and other slow moving vehicles and that the emblem was identical to all the ones he had seen. He also indicated that he had difficulty locating the ASAE specifications and that they were only available at the University of Illinois. Plaintiff objected to the introduction of the emblem because it did not conform to ASAE standards and because the law did not require its placement on the trailer. The court refused admission of the emblem into evidence.

■■ During the instruction conference, defendant offered an instruction (defendant's Instruction 17) incorporating section 12—709 of the Code pertaining to the requirements of placing a slow moving vehicle emblem on certain vehicles. The instruction provided that if plaintiff violated this provision the jury could consider it together with all other facts and circumstances in determining whether he was contributorily negligent. The court apparently refused this instruction for the same reason it prevented defendant from making any additional references to these emblems at trial.

Section 12—709 provides in part:

"(a) Every animal drawn vehicle, farm tractor, implement of husbandry and special mobile equipment when operated on a highway must display a slow-moving vehicle emblem mounted on the rear except as provided in paragraph (b) of this Section. * * *

(b) Every vehicle or unit described in paragraph (a) of this Section when operated in combination on a highway must display a slow-moving vehicle emblem as follows:

1. Where the towed unit or any load thereon partially or totally obscures the slow-moving vehicle emblem on the towing unit, the towed unit shall be equipped with a slow-moving vehicle emblem. In such cases the towing unit need not display the emblem.

2. Where the slow-moving vehicle emblem on the towing unit is

not obscured by the towed unit or its load, then either or both may be equipped with the required emblem but it shall be sufficient if either displays it.

* * *

(c) The slow-moving vehicle emblem required by paragraphs (a) and (b) of this Section must meet the specifications and mounting requirements established by the Department. Such specifications and mounting requirements shall be based on the specifications adopted by the American Society of Agricultural Engineers * * * .

(d) A slow-moving vehicle emblem is intended as a safety identification device and shall not be displayed on any vehicle nor displayed in any manner other than as described in paragraphs (a), (b) and (c) of this Section."

Section 12—205.1, entitled "Implements of husbandry or slow-moving vehicles—Display of amber signal lamp," provides:

"Every animal drawn vehicle, farm tractor, implement of husbandry and special mobile equipment, * * * when operated on a highway during a time when lighted lamps are required by Section 12—201 of this Chapter, shall display to the rear at least one flashing amber signal lamp mounted as high as practicable and of sufficient intensity to be visible for a distance of at least 500 feet in normal sunlight; provided, that only the rearmost vehicle of a combination of vehicles coupled together need display such lamp."

Our reading of the above provisions convinces us that the trial court erred in preventing defendant from making further reference to slow moving vehicle emblems and in refusing defendant's Instruction 17. The plain and unambiguous language of section 12—709 states that certain vehicles, which would include the type of vehicles driven by plaintiff, *must* display a slow moving vehicle emblem as provided by subsection (b) and (c) of the statute. The language is mandatory, not discretionary, and does not distinguish between daylight and evening hours. Section 12—205.1, which requires the display of a flashing amber light on these same vehicles during the period from sunset to sunrise (see Ill. Rev. Stat. 1977, ch. 95½, par. 12—201(a)) does not compel us to construe section 12—709 as a daytime provision. The legislature reasonably determined that a slow-moving vehicle emblem is ample precaution to oncoming motorists during daylight hours and that the extra or additional precaution of a flashing amber light at night or during reduced visibility is necessary for the safety of travelers on our highways.

Even if we were to accept plaintiff's position that section 12—709 applies only in the daytime, defendant was still entitled to an instruction

on slow-moving vehicle emblems. The testimony at trial was conflicting as to the amount of daylight at the time of the collision. It was therefore error for the trial court to refuse an instruction which had an evidentiary basis in the record and which fairly presented defendant's theory of the case. (See *Perry v. Chicago and North Western Transportation Co.* (1977), 54 Ill. App. 3d 82, 369 N.E.2d 155.) Furthermore, it is inconsistent for plaintiff to assert that the giving of an instruction on slow-moving vehicle emblems was improper when it was his position that the accident occurred prior to sundown.

■■ We believe the trial court also erred in refusing defendant's instruction No. 18 to the effect that the violation of section 12—205 of the Code (Ill. Rev. Stat. 1977, ch. 95½, par. 12—205), requiring two red tail lamps on certain vehicles, may also be considered in determining the presence or absence of plaintiff's contributory negligence. It was the opinion of the court that section 12—205 was not applicable to vehicles such as plaintiff's trailer.

Section 12—205, entitled "Lamps on other vehicles and equipment," provides in part:

> "Every vehicle, including animal drawn vehicles, referred to in paragraph (b) of Section 12—101, not specifically required by the provisions of this Article to be equipped with lamps or other lighting devices, shall at all times specified in Section 12—201 of this Act be equipped with at least 2 lamps displaying a white light visible from a distance of not less than 1,000 feet to the front of such vehicle and shall also be equipped with 2 lamps displaying a red light visible from a distance of not less than 1,000 feet to the rear of such vehicle.
>
> \* \* \*
>
> The provisions of this Section are in addition to any lighting equipment required by Section 11—607 of this Act."

Subsection (b) of section 12—101 of the Code (Ill. Rev. Stat. 1977, ch. 95½, par. 12—101) provides:

> "The provisions of this Chapter with respect to equipment on vehicles shall not apply to implements of husbandry, road machinery, road rollers, or farm tractors or to farm-wagon type trailers having a fertilizer spreader attachment permanently mounted thereon, having a gross weight of not to exceed 10,000 pounds and used only for the transportation of bulk fertilizer or to farm-wagon type tank trailers of not to exceed 1200 gallons capacity, used during the liquid fertilizer season as field-storage "nurse tanks" supplying the fertilizer to a field applicator and moved on highways only for bringing the fertilizer from a local

source of supply to farm or field or from one farm or field to another."

A careful reading of these statutory provisions demonstrates that the trial court misinterpreted section 12—205 in refusing defendant's instruction No. 18. In justifying its decision, the court concluded that the taillight requirements of section 12—205 were not applicable to farm vehicles, such as plaintiff's trailer, because under subsection (b) of section 12—101, the provisions of chapter 12 of the Illinois Vehicle Code with respect to equipment on vehicles do not apply to implements of husbandry and farm tractors. Chapter 12, entitled equipment of vehicles, sets forth various safety requirements for vehicular equipment, including, but not limited to, lights and lamps (section 12—201 *et seq.*), brakes (section 12—301 *et seq.*), tires (section 12—401 *et seq.*), and glass, windshields and mirrors (section 12—500 *et seq.*). Although subsection (b) of section 12—101 provides for a general exemption for implements of husbandry and farm tractors from these statutory provisions, we note that certain provisions under this chapter apply specifically to implements of husbandry, farm tractors and other slow-moving vehicles (see section 12—205.1 and 12—709) and that section 12—205 applies expressly to those vehicles exempted by subsection (b) of section 12—101. The only logical construction of subsection (b) of section 12—101 is that it exempts farm vehicles from the requirements of the chapter except as otherwise provided therein. Section 12—205 is one of these exceptions and is clearly applicable to the vehicles driven by plaintiff. Any doubt of *its* applicability must be laid to rest when one notes that by the express language of section 12—205 the lighting requirements contained therein are "in addition to any lighting equipment required by section 11—607 of this Act." Section 11—607 of the Code (Ill. Rev. Stat. 1973, ch. 95½, par. 11—607), which section had been repealed by Public Act 78-253, effective October 1, 1973, required the display of a flashing amber lamp on implements of husbandry and road tractors under certain conditions. It was the predecessor statute to section 12—205.1, which, we note, was enacted by the same public act that repealed section 11—607. If the legislature had intended for section 12—205 to fall within the exemption of subsection (b) of section 12—101, why would section 12—205 refer to additional lighting requirements for implements of husbandry, farm tractors and other slow-moving vehicles. Accordingly, we construe section 12—205 as requiring the display of two red tail lamps on the back of plaintiff's trailer during all times set forth in section 12—201 in addition to the lighting requirements imposed by section 12—205.1.

In conclusion, the trial court's refusal of defendant's Instructions Nos. 17 and 18 and the ruling precluding defendant from making additional

860

references to slow-moving vehicle emblems hindered defendant's presentation of his case to the jury. Serious questions were raised at trial concerning the possible contributory negligence of plaintiff; and the presence or absence of taillights on the trailer and a visible slow-moving emblem on either of the two vehicles could therefore have a bearing on the outcome of this controversy. While we are not stating that plaintiff was contributorily negligent as a matter of law, we believe the conflicting testimony was such that the jury be allowed to consider all possible theories based on the evidence of how the accident occurred. Accordingly, we hold that the various rulings of the trial court mentioned above were prejudicial to defendant's case and denied him a fair trial.

Defendant has raised other issues which we need not address in light of our decision.

For the reasons stated, the judgment of the Circuit Court of Marion County is reversed and the cause remanded for a new trial.

Reversed and remanded.

JONES, P. J., and SPOMER, J., concur.