ETHEL M. GRAVES, Plaintiff-Appellant, *v*. NORTH SHORE GAS COMPANY, Defendant-Appellee.

Second District   No. 80-782

Opinion filed August 4, 1981.

Donald T. Morrison & Associates, of Waukegan, for appellant.

James K. Toohey and Barbara Ross, both of Ross, Hardies, O'Keefe, Babcock & Parsons, of Chicago, for appellee.

Mr. JUSTICE REINHARD delivered the opinion of the court:

This is an appeal from a judgment entered upon a jury verdict against plaintiff, Ethel M. Graves, in a negligence action which sought to recover for personal injuries suffered by her when she stepped in an alleged defect in a public street, fell and fractured her hip. The jury returned a verdict for the defendant, and the plaintiff's post-trial motion was denied. Plaintiff presents the following issues for our review contending that the trial court erred: in not directing a verdict on liability for the plaintiff; in instructing the jury on contributory negligence; and in allowing a witness to testify whose name had not been provided in answer to interrogatories and whose testimony was irrelevant. Plaintiff also contends that the verdict was against the manifest weight of the evidence.

The first witness called by the plaintiff was Bertha Simmons who resided on Montesano Avenue near the scene of the accident. Simmons had not seen Mrs. Graves fall but arrived on the scene shortly thereafter. Simmons testified that the alleged defect in the street extended from one curb to the other, was big enough to put one's foot in, and was "quite deep." She also stated that there was quite a bit of dirt and gravel on the street around the defect and that there were no barricades or warning signs in the area at the time of the accident.

Martin Grum, a Waukegan police officer who had been called to the scene of the accident, was the next witness called for direct examination.

Grum stated that the hole in the street was approximately 12 inches wide and 8 inches deep at the point where Mrs. Graves had fallen. Grum further testified that although the trench extended across the entire width of the street, its depth varied.

Plaintiff then called Horace Biggers, an employee of defendant North Shore Gas Company and the foreman on the work crew which installed the gas service to the house at 1519 Montesano, under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 60). The substance of Biggers' section 60 testimony and his testimony when recalled by defendant later in the trial revealed the following information. Defendant's work crew arrived on the scene in February of 1978. After trenching a hole on the surface of the ground from the house to the street, the crew attempted to bore a hole underneath the pavement using a machine called a "mole." However, since the ground was so frozen, this procedure proved futile. At this point, defendant contacted the City of Waukegan in order to obtain permission to cut through the pavement of the street. The record reflects that written permission was granted by the city on February 10, 1978. The crew then began to cut the pavement across Montesano Avenue using a "backhoe trencher." Biggers testified that the machine cut a trench 30 inches deep and 5½ to 6 inches wide. After the service was connected to the gas main, the work crew patched the street with sand and "cold patch" black top. The sand and blacktop were compacted with a pneumatic tool. Biggers stated that the "cold patch" was used to repair the street because the permanent "hot patch" was not available during the winter. Biggers indicated that the "cold patch" would not harden to the same degree as would the "hot patch." He further stated that he had inspected the site sometime after the work had been completed and that the excavation appeared to be level. Biggers testified there was no need for warning signs or barricades when the job was completed.

After completion of the section 60 examination, plaintiff Ethel Graves was called for direct examination. Mrs. Graves stated that on April 14, 1978, she and her husband had traveled to 1519 Montesano in order to view the new house that had been constructed there. Graves testified that her husband parked the car "a couple of feet" away from the curb in front of the house. She exited the car from the passenger side, took "a couple of steps," placed her left foot into the alleged defect, and fell over on her right side. Mrs. Graves stated that she did not see the trench and that, just prior to her fall, she was looking at the new house instead of the ground. On cross examination, Mrs. Graves stated that the trench was smooth in the middle but was "washed out on the ends." She also testified that the parkway in front of the new house was "full of mud" and that the street around the trench was strewn with gravel from trucks moving in and out.

She further indicated that the condition of the trench as it existed on the day of the accident looked like that shown in a photograph later admitted as defendant's exhibit No. 2.

Plaintiff's husband, Edward Graves, then testified. Mr. Graves estimated the depth of the trench at the point where his wife had fallen to be five to six inches. Mr. Graves also corroborated the fact that the trench was level in the middle but washed out near the curbs and that there were no barricades or warning signs near the excavation.

The first witness called by defendant for direct examination was Robert Hund, the director of personnel and safety for the North Shore Gas Company. Hund testified that North Shore Gas Company had not received any complaints regarding the condition of the street at 1519 Montesano prior to April 14, 1978, the date of plaintiff's accident. Hund also stated that he had contacted Bertha Simmons on October 23, 1979, to inquire about her knowledge of the accident. Hund stated that, during their conversation, Simmons had told him that she did not notice a trench in the street at the location of Mrs. Graves' fall. The court then instructed the jury that Hund's testimony was to be considered only for the purpose of impeaching Simmons' previous testimony and not for the truth of the matter asserted.

Gerald Heinold, a member of the work crew that performed the excavation at 1519 Montesano, also testified as part of defendant's case. Heinold stated that, when the trench was filled, the cold patch seal was mounted up approximately an inch above the surface of the street in order to allow for any settling that might occur during the winter.

Later in the trial, Joseph Bidwill, an employee of Pacific Company, a paving contractor, was called by defendant to testify. Counsel for plaintiff objected to the anticipated testimony since Bidwill's name had not been furnished in response to plaintiff's discovery interrogatories. The trial judge overruled the objection, and Bidwill was allowed to testify. Bidwill stated that Pacific Company contracts to repave streets after utility companies complete underground work. He also stated that a permanent hot asphalt patch could not be placed in the street during the winter months "because the asphalt will freeze and expand and it won't be a suitable patch." Bidwill further testified that April 3 was the first date on which Pacific Company performed any asphalt work in 1978 and that it did not perform any work for North Shore Gas Company until May 3 of that year. Bidwill also stated that his company would not fill a work order until "we have accumulated enough work in a certain area to make it economically feasible for us to do a job, a good job for the utility companies and a profitable job for us."

Robert Johnson, street superintendent of the City of Waukegan, was the last witness called by the defendant. Johnson indicated that he had

searched the city's records for complaints regarding the condition of the street in front of 1519 Montesano. He stated that no complaint had been filed concerning the alleged defect prior to April 14, 1978, the date of Mrs. Graves' accident. We have not set forth any of the testimony concerning plaintiff's injuries as it is not relevant to the issues raised on appeal.

Plaintiff first asserts as a basis for reversal that the trial court erred when it failed to grant her motion for a directed verdict at the close of all the evidence because defendant was negligent as a matter of law, a public utility which creates defects in the public way owes a higher duty than ordinary care, and a public utility is strictly liable for defects it creates in the public way.

The well-established *Pedrick* rule pertaining to directed verdicts states, "verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern Ry. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) Plaintiff argues that defendant was negligent as a matter of law for its failure to return to the excavation site to inspect and repair any subsidence that may have taken place. Plaintiff cites *McDonald v. Frontier Lanes, Inc.* (1971), 1 Ill. App. 3d 345, 272 N.E.2d 369, in support of this proposition. However, while the court in *McDonald* stated that the defendant gas company should have foreseen that some harm would result from the subsidence of its repair work in the excavation and its failure to prevent or correct its deterioration, the court specifically held that this evidence merely supported the jury's conclusion of liability. The court did not conclude, nor was the issue before it, that such evidence would make the gas company liable as a matter of law.

■■ ■ In the present case, evidence adduced at trial showed that defendant had backfilled the trench with pneumatically tamped sand and covered the top with "cold patch" blacktop. The permanent "hot patch" could not be obtained during the winter. However, defendant had placed an order for the "hot patch" so that the permanent repair would be made when it became available. The jury further heard evidence that Horace Biggers, defendant's foreman on this job, had on one occasion returned to the location and found the trench to be level. The jury had before it a photograph which purportedly showed the trench as it existed on the day of the accident. This evidence could have established that defendant acted reasonably under the circumstances. The question of the absence or existence of negligence should be resolved as a question of law and a verdict directed only when the facts are such that there could be no difference in the judgment of reasonable men as to the inferences to be

drawn from the facts. (*Carlson v. Dorsey Trailers, Inc.* (1977), 50 Ill. App. 3d 748, 753, 365 N.E.2d 1065.) In a negligence action, where the evidence is reasonably consistent with two hypotheses, one of which imposes liability and the other which does not, the case should be submitted to the jury. *Thayer v. Chicago Transit Authority* (1976), 40 Ill. App. 3d 284, 287, 352 N.E.2d 331.

■■ Plaintiff further asserts that if defendant was not willing to make frequent inspections and repairs on the temporary patch, it could have placed warnings, signs or barricades around the excavation to alert the public of the potential danger. However, the obligation to warn will only arise when a contractor creates an unsafe condition which is not apparent to other parties. (See *Kirby v. General Paving Co.* (1967), 86 Ill. App. 2d 453, 457, 229 N.E.2d 777.) It does not appear from our examination of testimony and the photograph in the record that the hole in the pavement was so obstructed as to be unapparent to the plaintiff or to others. The trial judge instructed the jury regarding plaintiff's allegations of negligence which included the defendant's failure to erect barricades or otherwise warn of the excavation. Such a question was one of fact, and it cannot be concluded from a close reading of the record that defendant was so clearly negligent that no verdict in its favor could ever stand.

Plaintiff also asserts for the first time on appeal that the trial judge should have granted a directed verdict on the basis that the defendant gas company should be held to a higher standard of care for the creating and repairing of defects in the public way. Not only has plaintiff failed to cite any Illinois precedent for this proposition, but we find that the plaintiff cannot proceed on a particular theory in the trial court and present a new theory upon appeal. (*Osborne v. Sprowls* (1981), 84 Ill. 2d 390, 398-99, 419 N.E.2d 913, 917-18.) In the trial court she not only failed to plead a higher standard of care, but also submitted instructions which were given by the court on the reasonable care standard. To permit a change of theory on review would not only greatly prejudice the opposing party but would also weaken our system of appellate jurisdiction. *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 148, 324 N.E.2d 417.

Plaintiff's final argument that a directed verdict for her should have been granted is that the defendant is strictly liable for the injuries to plaintiff. She also submits that if defendant were to be held strictly liable, any contributory negligence then would not bar her recovery. However, plaintiff's theory of strict liability also is not properly before this court. The first mention of a strict liability theory came in plaintiff's reply memorandum in support of her post-trial motion. However, the issue had not been raised in the post-trial motion itself. Failure to specifically allege error in the post-trial motion waives the issue for review. *Wilson v. Clark*

(1981), 84 Ill. 2d 186, 189-190, 417 N.E.2d 1322; Ill. Rev. Stat. 1979, ch. 110, par. 68.1(2).

Even if this court were to consider the plaintiff in sufficient compliance with the post-trial motion rule, plaintiff's strict-liability theory would still not be properly preserved for appeal since she failed to plead that theory at trial. Again, it is the rule in Illinois that where a plaintiff has proceeded on a particular theory in the trial court, she cannot shift her theory of liability on appeal. (*Osborne v. Sprowls* (1981), 84 Ill. 2d 390, 398-99, 419 N.E.2d 913, 917-18; *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 148, 324 N.E.2d 417; *Hux v. Raben* (1967), 38 Ill. 2d 223, 224-25, 230 N.E.2d 831.) Moreover, her theory of strict liability is clearly nonmeritorious. Plaintiff attempts to equate the legal effect of an ordinance of the City of Waukegan regulating the opening of streets to lay pipes and erecting barriers with a State safety statute (Ill. Rev. Stat. 1979, ch. 121, pars. 314.4, 314.6), which was held in *Vegich v. McDougal Hartmann Co.* (1981), 84 Ill. 2d 461, 419 N.E.2d 918, to impose strict liability and bar contributory negligence as a defense in actions brought under that statute. This contention is completely without merit, as the Waukegan ordinance is neither an act of the Illinois General Assembly creating a cause of action by means of a safety statute, nor does it by its terms apply only to wilful actions as allowed under *Vegich.*

A directed verdict also would have been inappropriate in this case since a question of fact existed pertaining to plaintiff's exercise of due care. Our treatment of this point is equally applicable to plaintiff's second contention, which is that the court erred in instructing the jury on contributory negligence. Plaintiff, in her motion to cite additional authority, asserts that contributory negligence is not applicable to her case since the Illinois Supreme Court has recently adopted the doctrine of comparative negligence as the law in negligence cases. (*Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886.) However, the supreme court specifically held that the new law would apply "to all cases in which trial commences on or after June 8, 1981, the date on which the mandate in this case shall issue. This opinion shall not be applicable to any case in which trial commenced before that date—except that if any judgment be reversed on appeal for other reasons, this opinion shall be applicable to any retrial." (85 Ill. 2d 1, 28, 421 N.E.2d 886, 898.) Clearly, then, the doctrine is not applicable, and the rule of contributory negligence will apply.

Next, in order for a directed verdict to be proper, plaintiff would have to be free from contributory negligence as a matter of law. The question of contributory negligence is ordinarily a question of fact for the jury. (*Millette v. Radosta* (1980), 84 Ill. App. 3d 5, 26, 404 N.E.2d 823; *Sterba v. First Federal Savings & Loan Association* (1966), 77 Ill. App. 2d

380, 385, 222 N.E.2d 547.) If there is any evidence of contributory negligence on the part of the plaintiff, a question of fact is presented which must be left to the jury for determination. (*Smith v. Bishop* (1965), 32 Ill. 2d 380, 383, 205 N.E.2d 461.) The same *Pedrick* standard is used to determine whether the issue of plaintiff's contributory negligence should be submitted to the jury. *Bauer v. Johnson* (1980), 79 Ill. 2d 324, 332, 403 N.E.2d 237; *Comper v. Jones* (1980), 80 Ill. App. 3d 850, 855, 400 N.E.2d 475.

Plaintiff cites *Graham v. City of Chicago* (1931), 346 Ill. 638, 178 N.E. 911, and *Sterba v. First Federal Savings & Loan Association* (1966), 77 Ill. App. 2d 380, 222 N.E.2d 547, as authority for the proposition that a pedestrian has no duty to look down to discover potential defects in a public street or sidewalk. These cases are inapposite. In *Sterba*, the court stated that although the plaintiff was not necessarily required to be looking up in order to avoid an awning which struck her in the head, her failure to do so was a fact to be considered by the jury in reaching its conclusion on the issue of plaintiff's contributory negligence. (77 Ill. App. 2d 380, 385, 222 N.E.2d 547, 549-50.) Thus the court held that the issue of contributory negligence could not be decided as a matter of law and the case was properly submitted to the jury. In *Graham*, all we find is the cryptic statement that "[t]o hold a person absolutely bound to keep his eyes fixed upon a sidewalk in search of defects and dangerous places would be to establish a manifestly unreasonably and impracticable rule." (346 Ill. 638, 640-41, 178 N.E. 911.) This statement cannot be read so generally as to imply that a pedestrian who completely disregards obvious hazards in the public way will at all times be free of contributory negligence.

■■ The case of *Trojan v. City of Blue Island* (1956), 10 Ill. App. 2d 47, 134 N.E.2d 29, which plaintiff cites, also does not support her position on this issue. Although the court in *Trojan* stated that "[a] pedestrian may ordinarily assume that a sidewalk is in a reasonably safe condition and is not absolutely bound to keep his eyes on the sidewalk in search of possible defects" (10 Ill. App. 2d 47, 51, 134 N.E.2d 29), the court went on to hold that the case was properly submitted to the jury on the issue of contributory negligence. The fact that a pedestrian is not "absolutely bound to keep his eyes on the sidewalk" does not mean that a pedestrian need not ever look for possible defects which would cause him to fall.

■■ The evidence in the present case is not so conclusive on the issue of the presence or absence of contributory negligence as to warrant a directed verdict. The plaintiff was admittedly looking at the new house instead of the ground immediately after she exited the car and began to walk towards the house. There was evidence that new houses had been

constructed on the street and that the street was strewn with gravel at the accident site from trucks moving in and out. Also, the evidence was conflicting as to whether the trench depression extended across the entire street, thereby raising the question of fact as to whether plaintiff should have felt any noticeable impact when the car in which she was riding drove over it. We conclude that under the evidence it was a question of fact for the jury to determine whether plaintiff was guilty of contributory negligence in failing to observe and avoid any depression, and the trial judge did not err in instructing the jury on the issue of plaintiff's contributory negligence.

Plaintiff's next contention is that it was error for the trial judge to allow Joseph Bidwill to testify, since his testimony was irrelevant and immaterial and since his name had not been furnished prior to trial in response to plaintiff's interrogatories.

Plaintiff first argues that since defendant had an affirmative, non-delegable duty to repair the excavation, the testimony of Mr. Bidwill, an employee of Pacific Company, which had been employed by defendant to patch the hole, was irrelevant and immaterial. Plaintiff asserts that Bidwill's testimony suggested to the jury that defendant shifted its responsibility for repaving the excavation to Pacific Company. Both parties agree that a utility company which creates a defect in the public way is under an affirmative, nondelegable duty to take precautions against possible injuries which may result around the excavation site. This is, in fact, the law in Illinois. As the court in *Reith v. General Telephone Co.* (1974), 22 Ill. App. 3d 337, 317 N.E.2d 369, explained:

> "The defendant had an affirmative, nondelegable duty to take precautions against the possible and probable injuries around an excavation site constructed through its franchise or permission obtained from the state and local authority. This duty, being non-delegable, remains on the defendant irrespective of a contract that might make Harris-McBurney Construction Company an independent contractor, vis-a-vis its relationship to the defendant." (22 Ill. App. 3d 337, 340-41, 317 N.E.2d 369, 372-73.)

However, the point of this and other Illinois cases, (see *e.g., Chicago Economic Fuel Gas Co. v. Myers* (1897), 168 Ill. 139, 48 N.E. 66; *North Chicago Street R. R. Co. v. Dudgeon* (1900), 184 Ill. 477, 56 N.E. 796) is that "one who obtains a license for municipal authorities to encumber the streets shall not shield himself from liability for injuries caused by acts that unlawfully encumber the streets through the negligence of an independent contractor." 22 Ill. App. 3d 337, 342, 317 N.E.2d 369.

The fact that defendant could not shift liability for the accident to Pacific Company does not of itself render testimony of Pacific's employees immaterial. The record does not reveal, as plaintiff contends, that

the questions asked of Mr. Bidwill suggested that the defendant had assigned its responsibility for any accidents which might occur to Pacific Company. The testimony was offered to show the reasonableness of defendant's efforts to get the street repaved at the earliest possible date. If plaintiff felt that the testimony would have a prejudicial effect, it was incumbent upon her to offer a limiting instruction. (*Storm v. Brown* (1973), 15 Ill. App. 3d 29, 303 N.E.2d 42.) Plaintiff failed to do so and cannot now raise on appeal the failure of the trial judge to instruct the jury in this regard. Ill. Rev. Stat. 1979, ch. 110, par. 67(3).

■■ Plaintiff also asserts that it was error for the trial court to allow Bidwill to testify that Pacific Company would not have repaired the street until such time as it had accumulated enough work orders in the area to make the job economically feasible. Plaintiff contends that this testimony was irrelevant to defendant's standard of care. However, the record shows that plaintiff initially failed to object to the question from defendant's attorney although she did object to a similar question subsequently. An objection must be made to alleged incompetent evidence at the time of its admission, and failure to make a timely objection waives the issue for purposes of appeal. (*Joynt v. Barnes* (1979), 71 Ill. App. 3d 187, 204, 388 N.E.2d 1298; *Bohannon v. Schertz* (1974), 21 Ill. App. 3d 149, 151, 315 N.E.2d 316.) Additionally, although plaintiff argued for the exclusion of Bidwill's testimony on other grounds in her post-trial motion, she did not specifically raise the question of irrelevancy. As previously stated, failure to specifically allege error in the post-trial motion constitutes a waiver. *Wilson v. Clark* (1981), 84 Ill. 2d 186, 189-90, 417 N.E.2d 1322.

However, even if we were to consider the issue properly preserved, we would conclude that there was no error in allowing Bidwill to testify to the economic feasibility of repairing the street at a certain time. Again, it would appear that Bidwill's testimony was relevant in that it tended to show the reasonableness of defendant's efforts to get the street repaved at the earliest date.

Plaintiff further asserts that the trial judge abused its discretion in allowing Bidwill to testify at all since Bidwill's name had not been furnished in response to plaintiff's discovery interrogatory. Plaintiff's interrogatory No. 3 provided:

> "State the name and present or last known address, indicating which of all persons known either to yourself or of whom you have learned through your agents or attorneys who have knowledge of facts pertaining to the cause of action alleged in the complaint filed in this case."

■■ Plaintiff claims that defendant's failure to provide Bidwill's name violated Supreme Court Rule 201(b)(1) which provides that a party may obtain by discovery a full disclosure of the "identity and location of

persons having knowledge of relevant facts." (Ill. Rev. Stat. 1979, ch. 110A, par. 201(b)(1).) However, section 58(3) of the Illinois Civil Practice Act provides that "[a] party shall not be required to furnish the names and addresses of his witnesses." (Ill. Rev. Stat. 1979, ch. 110, par. 58(3).) The two provisions were given the following interpretation by the supreme court in *Hruby v. Chicago Transit Authority* (1957), 11 Ill. 2d 255, 258, 142 N.E.2d 81:

> "The rules are not inconsistent with the statute. For, as we observed in the *Krupp case*, at page 39, 'The interrogatories use the term "witness" in the primary sense of those who have personal knowledge of the event and not in the technical sense of those who are to be called to testify at the trial. *The distinction is that which was drawn by this court in drafting the present Rule 19-4. (Compare Ill. Rev. Stat. 1955, chap. 110, par. 58, with par. 101.19-4).*' (Emphasis added.) So interpreted, the statute protects a party from being compelled to identify the witnesses he intends to use at the trial (*i.e.*, witnesses in the technical sense), but does not preclude discovery regarding so-called 'occurrence witnesses' (or 'persons having knowledge of relevant facts,' as stated in Rule 19-4)."

Mr. Bidwill's identity was not required to be disclosed prior to trial unless he fell within the persons required to be identified in answer to the interrogatory. Bidwill did not observe the accident occur and did not inspect the scene afterwards. Bidwill was called to testify to establish the earliest time when the permanent repaving could have been accomplished. Plaintiff, however, refers to Bidwill as a post-occurrence witness and cites *Strope v. Chicago Transit Authority* (1979), 71 Ill. App. 3d 987, 389 N.E.2d 1374, for the proposition that a post-occurrence witness falls within the category of persons who have knowledge of the relevant facts and are amenable to disclosure under Supreme Court Rule 210(b)(1). However, the witness involved in the *Strope* case was a policeman who arrived on the scene after the plaintiff was injured, called an ambulance, and remained at the scene until the ambulance arrived. The record does not reveal that Bidwill was ever present at the scene or had knowledge of facts pertaining to the accident. As he cannot be appropriately classified as a post-occurrence witness and a person who clearly should be disclosed in answer to the interrogatory, the trial judge did not abuse his discretion in allowing Bidwill to testify.

■■ Finally, we conclude that the record does not support plaintiff's contention that the verdict was against the manifest weight of the evidence. On motion for a new trial a court will weigh the evidence and set aside the verdict and order a new trial if the verdict is contrary to the manifest weight of the evidence. (*Mizowek v. De Franco* (1976), 64 Ill. 2d

303, 310, 356 N.E.2d 32.) A verdict may not be set aside simply because the trial judge believes a different conclusion would be more reasonable. (*Bank of Marion v. Robert "Chick" Fritz, Inc.* (1974), 57 Ill. 2d 120, 126, 311 N.E.2d 138.) And, a court of review will not disturb the findings of the jury unless the verdict is against the manifest weight of the evidence. (*Eleopoulos v. Dzakovich* (1981), 94 Ill. App. 3d 595, 598, 418 N.E.2d 980.) Manifest weight has been described as meaning the clearly evident, plain and indisputable weight of the evidence. *Gettemy v. Grgula* (1975), 25 Ill. App. 3d 625, 628, 323 N.E.2d 628.

■■ In the instant case, although it is undisputed that defendant caused the trench to be in the street and filled in with only a temporary patch, it was entirely reasonable for the jury to conclude that defendant had fully discharged its duty since a permanent patch was not available in the winter months and efforts had been made to contract for permanent paving when it was available. The evidence also was conflicting as to actual depth and length of the trench thereby further creating issues of fact for the jury on the liability question. Where the evidence is conflicting and the finding of the jury is not clearly against the preponderance of the evidence, the court will not set aside the verdict. (*City of Monticello v. LeCrone* (1953), 414 Ill. 550, 557, 111 N.E.2d 338.) Also, it is clear from the record that the jury would have been justified in concluding that the plaintiff did not exercise reasonable care and was, thus, contributorily negligent. By plaintiff's own admission, immediately prior to her fall she was looking at the new house instead of watching for obstructions in an area which was the scene of new construction. Taking the record as a whole, it cannot be said that the conclusion reached by the jury was against the manifest weight of the evidence. See *Spankroy v. Alesky* (1977), 45 Ill. App. 3d 432, 359 N.E.2d 1078.

Accordingly, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

LINDBERG and UNVERZAGT, JJ., concur.